**STATE OF NORTH CAROLINA**

Carteret County

File No. 21 CVS 907

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
Carteret Investment Associates and Carteret Surgical Associates

*Address*
c/o Harvell and Collins, P.A. 1107 Bridges Street

*City, State, Zip*
Morehead City NC 28557

**VERSUS**

*Name Of Defendant(s)*
Mt. Hawley Insurance Company and Mag Mutual Insurance Company

# CIVIL SUMMONS

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Mt. Hawley Insurance Company<br>c/o North Carolina Department of Insurance<br>Attention: Commissioner of Insurance, 1201 Mail Service Center<br>Raleigh NC 27699 | Mag Mutual Insurance Company<br>c/o North Carolina Department of Insurance<br>Attention: Commissioner of Insurance, 1201 Mail Service Center<br>Raleigh NC 27699 |

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

*Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*
Wesley A. Collins
Harvell and Collins, P.A.
1107 Bridges Street
Morehead City NC 28557

*Date Issued* 9/13/21 *Time* 3:43 ☐ AM ☒ PM

*Signature* Kim Wallas

☒ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court*

☐ ENDORSEMENT (ASSESS FEE)
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

*Date Of Endorsement* *Time* ☐ AM ☐ PM

*Signature*

☐ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court*

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)


© 2018 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| | |
|---|---|
| *Service Fee Paid* $ | *Signature Of Deputy Sheriff Making Return* |
| *Date Received* | *Name Of Sheriff (type or print)* |
| *Date Of Return* | *County Of Sheriff* |

AOC-CV-100, Side Two, Rev. 4/18

© 2018 Administrative Office of the Courts

**STATE OF NORTH CAROLINA**

Carteret County

File No. 21 CVS 907

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name And Address Of Plaintiff 1
Carteret Investment Associates, LLC
c/o Harvell and Collins, P.A.
1107 Bridges Street
Morehead City NC 28557

Name And Address Of Plaintiff 2
Carteret Surgical Associates, P.A.
c/o Harvell and Collins, P.A.
1107 Bridges Street
Morehead City NC 28557

FILED
2021 SEP 13 P 3:41
CARTERET CO., C.S.C.
BY Kbw

# GENERAL CIVIL ACTION COVER SHEET

☒ INITIAL FILING ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

**VERSUS**

Name And Address Of Defendant 1
Mt. Hawley Insurance Company
c/o North Carolina Department of Insurance
Attention: Commissioner of Insurance, 1201 Mail Service Center
Raleigh NC 27699

Summons Submitted
☒ Yes ☐ No

Name And Address Of Defendant 2
Mag Mutual Insurance Company
c/o North Carolina Department of Insurance
Attention: Commissioner of Insurance, 1201 Mail Service Center
Raleigh NC 27699

Summons Submitted
☒ Yes ☐ No

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)
Wesley A. Collins
Harvell and Collins, P.A.
1107 Bridges Street
Morehead City NC 28557

Telephone No.: 252-726-9050
Cellular Telephone No.:

NC Attorney Bar No.: 29156
Attorney Email Address: input@harvellandcollins.com

☒ Initial Appearance in Case ☐ Change of Address

Name Of Firm: Harvell and Collins, P.A.
Fax No.: 252-727-0055

Counsel For
☒ All Plaintiffs ☐ All Defendants ☐ Only: *(list party(ies) represented)*

☒ Jury Demanded In Pleading ☐ Complex Litigation ☐ Stipulate to Arbitration

**TYPE OF PLEADING**

*(check all that apply)*

- ☐ Amend (AMND)
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Assess Costs (COST)
- ☐ Answer/Reply (ANSW-Response) *(see Note)*
- ☐ Change Venue (CHVN)
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNFJ)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL)
- ☐ Contempt (CNTP)
- ☐ Continue (CNTN)
- ☐ Compel (CMPL)
- ☐ Counterclaim (CTCL) *Assess Court Costs*
- ☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
- ☐ Dismiss (DISM) *Assess Court Costs*
- ☐ Exempt/Waive Mediation (EXMD)
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Failure To Join Necessary Party (FJNP)
- ☐ Failure To State A Claim (FASC)
- ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
- ☐ Improper Venue/Division (IMVN)
- ☐ Including Attorney's Fees (ATTY)
- ☐ Intervene (INTR)
- ☐ Interplead (OTHR)
- ☐ Lack Of Jurisdiction (Person) (LJPN)
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
- ☐ Modification Of Child Support In IV-D Actions (MSUP)
- ☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
- ☐ Petition To Sue As Indigent (OTHR)
- ☐ Rule 12 Motion In Lieu Of Answer (MDLA)
- ☐ Sanctions (SANC)
- ☐ Set Aside (OTHR)
- ☐ Show Cause (SHOW)
- ☐ Transfer (TRFR)
- ☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
- ☐ Vacate/Modify Judgment (VCMD)
- ☐ Withdraw As Counsel (WDCN)
- ☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

(Over)

## CLAIMS FOR RELIEF

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☐ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)
- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☐ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
- ☐ Possession Of Personal Property (POPP)
- ☐ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other *(specify and list each separately)*

  Breach of Contract; Unfair Claims Settlement Practices; Common Law Bad Faith

| Date | Signature Of Attorney/Party |
|---|---|
| 9/13/2021 | [signature] |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☒ Additional Defendant(s) ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

AOC-CV-751, Side Two, Rev. 3/19
© 2019 Administrative Office of the Courts

STATE OF NORTH CAROLINA FILED IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF CARTERET 2021 SEP 13 P 3: 42 FILE NUMBER: 21 CVS 907

CARTERET CO., C.S.C.
KBW

CARTERET INVESTMENT ASSOCIATES, LLC, and CARTERET SURGICAL ASSOCIATES, P.A.

Plaintiffs,

v.

MT. HAWLEY INSURANCE COMPANY, and MAG MUTUAL INSURANCE COMPANY,

Defendants.

**COMPLAINT**
(Jury Trial Demanded)

NOW COME Plaintiffs, Carteret Investment Associates, LLC and Carteret Surgical Associates, P.A. (hereinafter collectively referred to as "Plaintiffs"), by and through undersigned counsel, complaining of Defendants, Mt. Hawley Insurance Company, and Mag Mutual Insurance Company (hereinafter collectively referred to as "Defendants") by alleging and saying as follows:

**PARTIES**

1. Plaintiff Carteret Investment Associates, LLC (hereinafter "CIA"), is a limited liability company organized and existing under the laws of the State of North Carolina with its registered office and principal place of business located at 3714 Guardian Ave., Suite E, Morehead City, Carteret County, North Carolina.

2. Plaintiff Carteret Surgical Associates, P.A. (hereinafter "CSA") is a professional corporation incorporated and existing under the laws of the State of North Carolina with its registered office and principal place of business located at 3714 Guardian Ave., Morehead City, North Carolina.

3. Upon information and belief, Defendant Mt. Hawley Insurance Company

(hereinafter "Hawley") are individuals and/or an insurance company existing under the laws of Illinois and engaged in the business of insurance, whose principal place of business is Illinois. Defendant Hawley is engaged in the insurance business and upon information and belief is duly authorized by the North Carolina Department of Insurance to issue insurance in the State of North Carolina. Defendant Hawley was doing substantial business in North Carolina at all times relevant to this Complaint.

4. Upon information and belief, Defendant MAG Mutual Insurance Company (hereinafter "Mag") are individuals and/or an insurance company existing under the laws of Georgia and engaged in the business of insurance, whose principal place of business is Georgia. Defendant is engaged in the insurance business and upon information and belief is duly authorized by the North Carolina Department of Insurance to issue insurance in the State of North Carolina. Defendant Mag was doing substantial business in North Carolina at all times relevant to this Complaint.

## JURISDICTION AND VENUE

5. Jurisdiction is proper pursuant to N.C.G.S. §§ 7A-240 and 7A-243.

6. The Court has personal jurisdiction pursuant to N.C.G.S. § 1-75.4.

7. Venue is proper in Carteret County pursuant to N.C.G.S. § 1-82.

## FACTUAL BACKGROUND

8. Plaintiff CIA owns and manages real property, including but not limited to real property that is used for medical offices in Morehead City, North Carolina.

9. Plaintiff CIA owns real property and medical offices in Carteret County, North Carolina, (collectively, "NC Surgery Centers"), including but not limited to:

a. Carolinas Center for Surgery – Orthopedics & Spine ("General Surgery Center")

3714 Guardian Avenue, Suite E
Morehead City, NC 28557

b. Carolinas Center for Surgery—General Surgery ("Main Office")
306 Medical Park Court
Morehead City, NC 28557

c. Carolinas Center for Plastic Surgery – Morehead City ("Plastic Surgery Center")
3700 Symi Circle
Morehead City, North Carolina 28557

10. In addition, Plaintiff CIA owns real property located at 3726 Guardian Ave, Morehead City, North Carolina, and 221 Professional Circle, Morehead City, North Carolina.

11. These properties are collectively referred to herein as the "Property."

12. Plaintiff CSA operates a surgical practice throughout eastern North Carolina. It employs approximately fifteen surgeons and/or medical doctors. CSA's medical team provides general surgery, spinal surgery, orthopedic surgery, breast surgery, and other related medical services. CSA operates its surgical and medical practices in the medical offices owned by CIA, including but not limited to the NC Surgery Centers.

13. On September 7, 2018, North Carolina Governor declared a state of emergency because of the approach of Hurricane Florence to the State of North Carolina.

14. By Thursday, September 13, 2018, CSA had lost all electrical power at the NC Surgery Centers. Upon information and belief, most other areas in Carteret County lost electrical power as well.

15. Carteret County, North Carolina, was placed under a mandatory evacuation order, and state officials encouraged residents of Carteret County to evacuate their homes and business for higher, safer ground. Upon information and belief, most of CSA's surgeons, employees, and staff complied with the evacuation order and left Carteret County for their own health and safety.

16. Hurricane Florence made landfall in eastern North Carolina on or about Friday,

September 14, 2018, bringing heavy rainfall, tornados, storm surge over 10 feet, and strong winds which caused flooding and extensive damage across Carteret County. Upon information and belief, Hurricane Florence produced winds over 100 miles per hour with over thirty inches of rain to parts of North Carolina. In addition, there were historic levels of flooding and rain downpour in Carteret County due to Hurricane Florence. Many homes and businesses in Carteret County were no longer habitable and without power for the following week.

17. Although Florence had moved off from North Carolina by September 16, 2018, a state of emergency in North Carolina remained in effect.

18. At the time of Hurricane Florence, on or about September 14, 2018, the Property (including all structures and personal property thereon) was insured by Defendant Hawley under a Windstorm or Hail Policy, bearing Policy No. MWH0080435. In addition to insuring the Property, this Policy likewise includes a Business Income/Extra Expense Endorsement, thereby insuring the actual and necessary business income and/or expenses sustained due to a covered loss. Plaintiffs timely paid all premiums for the Policy, and the Policy was in full force and effect at all times relevant to this Complaint. A full and complete copy of the Policy, upon information and belief, is attached hereto and incorporated herein as Exhibit "1".

19. In addition, at the time of Hurricane Florence, on or about September 14, 2018, the Property (including all structures and personal property thereon) was insured by Defendant Mag Mutual, bearing Policy No. BOP 006799 02. Upon information and belief, in addition to insuring the Property, this Policy likewise includes a Business Income/Extra Expense Endorsement, thereby insuring the actual and necessary business income and/or expenses sustained due to a covered loss. Plaintiffs timely paid all premiums for the Policy, and the Policy was in full force and effect at all times relevant to this Complaint. A full and complete copy of the Policy is attached hereto and incorporated herein as Exhibit "2".

20. The policies of insurance are hereinafter collectively referred to as "Policy" or "Policies".

21. Hurricane Florence caused extensive damage to the NC Surgery Centers. By way of example and not limitation, the Main Office and the General Surgery Center had extensive water damage due to significant roof damage which allowed for water intrusion into the buildings, and the Plastic Surgery Center likewise incurred water damage.

22. Upon information and belief, the damages sustained to the Property during Hurricane Florence were storm-created damages and were covered under the Policy(s) provided through Defendants.

23. Upon observing damage to the Property, Plaintiffs timely notified Defendants of the Loss and made a claim under the Policy(s). Upon information and belief, the Claim was assigned Claim No. 00459602 (hereinafter the "Claim").

24. The Plaintiffs did everything they could to mitigate the damage to their property but it was still severely damaged as a result of Hurricane Florence.

25. As a result of this damage to the NC Surgery Centers, CSA could not continue to operate. CSA canceled all surgeries, procedures, and medical services for these locations until the repairs could be completed and its doctors and staff could safely return to Carteret County. Upon information and belief, this loss of income was a covered loss under the Policy(s), thereby entitling Plaintiff to payment by Defendants under the Policy(s).

26. Upon information and belief, shortly after the loss, Defendant Hawley issued an initial payment of $200,000.00 to Plaintiffs for repairs to the Property. Though the Defendants made an initial payment of $200,000.00, Defendants delayed the adjustment and handling of the claim from then on.

27. Throughout the claim, Plaintiff in good faith attempted to negotiate the loss with

Defendants, first through a public adjuster and then on its own.

28. Upon information and belief, though the claim was reported shortly after the loss occurred, it was not until May 26, 2020, that Defendant Hawley partially rejected Plaintiffs' claim. In relevant part, Defendant Hawley represented to Plaintiff that "[t]hough wind and resulting water damages were identified at Location Numbers Five (3700 Symi Circle) and Seven (2145 Country Club Rd.), a combination of damage causes was identified at Location Number One (3714 Guardian Ave). The wind damage and resulting covered water intrusion at Location Number One are not estimated to exceed that location's corresponding deductible . . . . The remaining interior water damage to Location Number One was not caused by wind damage to the roof or walls of the building." A full and complete copy of this correspondence is attached hereto and incorporated herein as Exhibit "3".

29. The remaining portions of the claim have not been accepted or rejected at this time.

30. In addition, in this correspondence, Defendant Hawley misrepresented policy language to Plaintiffs, including but not limited to General Conditions of the policy regarding legal action. Specifically, Defendant Hawley stated to Plaintiffs that legal action must be brought within two years after Plaintiffs have knowledge of the loss, despite the existence of an endorsement that directs that such action must be brought within three years and one day.

31. Defendants claim adjustment thereafter totaled $278,347.76 (building damages) plus $36,491.72 (business income loss). Subtracting the deductible amount of $105,683.53 and the advance payment of $200,000.00, Defendants tendered the remaining payment of $9,155.94 to Plaintiffs.

32. In an effort to repair the property and consistent with their obligations under the Policy(s), Plaintiffs made repairs to the Property. Because of Defendants' baseless delays and/or denial, Plaintiffs had to make payment out-of-pocket, though the loss was a covered loss under the

policy. Plaintiffs incurred costs and expenses totaling $1,300,803.36 to make repairs to the Property caused by Hurricane Florence.

33. Upon information and belief, these repairs were the result of a covered loss insured by Defendant under the Policy(s).

34. The difference in the amount paid under the Policy and the amount Defendants owe Plaintiffs is, upon information and belief, in excess of $25,000.00.

35. In addition, the difference in the amount paid under the Policy for business losses and the amount Defendants owe Plaintiffs is, upon information and belief, in excess of $25,000.00.

36. Plaintiffs file this Complaint based on the merits explained herein and in contemplation of the upcoming expiration of the statute of limitations on the Claim in which the Plaintiffs must preserve their right to bring the subject Claim.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

37. Plaintiffs reallege and incorporate the preceding allegations as if set forth verbatim herein.

38. The Policy is and was a valid and enforceable contract Plaintiffs and Defendants.

39. Defendants breached this contract by failing to provide the benefits, coverage, and payments due thereunder to Plaintiffs.

40. As a direct and proximate result of Defendants' breach of contract, Plaintiffs have suffered monetary damages in an amount equal to the payments due under the Policy, as well as consequential damages.

41. Plaintiffs' damages are in excess of this Court's jurisdictional threshold of Twenty-Five Thousand Dollars ($25,000.00).

**SECOND CLAIM FOR RELIEF**
**(Unfair Claims Settlement Practices)**

42. Plaintiffs reallege and incorporate the preceding allegations as if set forth verbatim herein.

43. The Defendants were at all times relevant hereto engaged in the business of selling and writing insurance policies and adjusting claims thereunder, and, at all times alleged herein, its actions were in or affecting commerce within the State of North Carolina.

44. Upon information and belief, Defendants engaged in unfair and deceptive acts and practices in the distribution, marketing and selling of insurance policies to consumers, and in investigating, adjusting and settling claims brought under such policies, including the Claim and the Policy, as follows:

a. Failing to treat its policyholders' interests with equal regard as it does its own interests, and treating the claims handling process as adversarial;

b. Failing to seek coverage of claims in good faith and provide its insureds all benefits of doubt;

c. Failing to diligently search for and consider all evidence that supports claims;

d. Acting with a profit motive in the claims handling process;

e. Failing to reasonably assist its policyholders with their claims;

f. Failing to disclose to its insureds all benefits, coverages, and time limits that may apply to claims;

g. Failing to conduct full, fair and prompt investigations of claims through its own efforts and expense, without shifting the burden of claim investigations upon its insureds;

h. Misrepresenting pertinent facts or insurance policy provisions relating to

coverages at issue, and time limitations;

i. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

j. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

k. Failing to affirm, accept, reject, or deny coverage of claims within a reasonable time;

l. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

m. Compelling the insured to institute litigation to recover amounts due under an insurance policy;

n. Failing to effectuate a prompt, fair and equitable settlement of claims in good faith;

o. Unjustifiably refusing to communicate with, or timely communicating with, the legal representatives of the insured; and

p. Other actions to be proven at trial.

45. The Defendants' above-described conduct, all in violation of N.C.G.S. § 58-63, was unfair, unscrupulous, immoral, and injurious to consumers, and therefore offended the public policy standards established by N.C.G.S. § 75-1.

46. As a proximate result of Defendants' conduct, Plaintiffs are obligated for attorney's fees and costs associated with this action, and N.C. Gen. Stat. § 75-16.1 provides for the recovery of such expenses.

47. The acts and omissions were unfair and deceptive under N.C. Gen. Stat. § 75-1.1. As a result of Defendants' acts and omissions, as herein described, Plaintiffs have suffered

damages in an amount equal to the benefits due under the Policy as well as consequential damages to be proven at trial.

48. In addition, Plaintiffs are entitled to treble damages pursuant to N.C.G.S. § 75-16.

49. Plaintiffs' damages exceed this Court's jurisdictional threshold of Twenty-Five Thousand Dollars ($25,000.00).

**THIRD CLAIM FOR RELIEF**
**(Common Law Bad Faith)**

50. Plaintiffs reallege and incorporate the preceding allegations as if set forth verbatim herein.

51. The Defendants' conduct, actions, omissions and refusals to timely and promptly adjust and pay the Claim constitutes bad faith in one or more of the following particulars:

a. The Defendants breached the covenant of good faith and fair dealing;

b. The Defendants demonstrated a willful, oppressive forestalling of payment in order to bring financial pressure to bear upon Plaintiffs for Defendants' own advantage and financial gain;

c. The Defendants misused its power and authority in such a way as to be tantamount to outrageous conduct;

d. The Defendants recklessly and wantonly disregarded Plaintiffs' rights as insureds under the Policy;

e. The Defendants misrepresented pertinent facts or insurance policy provisions related to the coverages at issue, and time limitations;

f. The Defendants failed in good faith to effectuate prompt, fair, and equitable settlement of the Claim after liability had become reasonably clear;

g. The Defendants withheld payment for the Plaintiffs' loss without a valid basis under the provisions of the Policy;

h. The Defendants acted in the manner outlined in Plaintiffs' Second Claim for Relief; and

i. The Defendants otherwise acted in bad faith as shall be shown through discovery and proven at the trial of this action.

52. The Defendants' acts and omissions show reckless indifference to Plaintiffs' rights, oppression, insult, rudeness, caprice and willfulness. The same constitutes Common Law Bad Faith.

53. As a result of the acts and omissions of Defendants, Plaintiffs have sustained damages and losses and are entitled to recover punitive and compensatory damages in an amount to be proven at trial.

54. Plaintiffs' damages exceed this Court's jurisdictional threshold of Twenty-Five Thousand Dollars ($25,000.00).

**JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiffs prays the Court for relief as follows:

1. That Plaintiffs have and recover of Defendants a sum equal to the benefits due under the Policy as well as consequential damages to be proven at trial;

2. That Plaintiffs be awarded treble its contract and compensatory damages and extra expense as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiffs' election, contract, compensatory, and punitive damages;

3. That Defendants be taxed with interest and the costs of this action, including Plaintiffs' attorneys' fees as provided by the common law and the North Carolina General Statutes,

including but not limited to Chapter 75 thereof;

4. That all issues of fact be tried by a jury; and

5. For such other, further and different relief as the Court deems just and proper.

This the 13 day of September, 2021.

HARVELL AND COLLINS, P.A.
*Attorneys for Plaintiff*

By: ______________________
Wesley A. Collins
NC State Bar Number: 29156
1107 Bridges Street
Morehead City, North Carolina 28557
Telephone: 252.726.9050
Facsimile: 252.727.0055
Email: input@harvellandcollins.com**
Email: wcollins@harvellandcollins.com*

**This email address must be used to effectuate service under Rule 5 of the North Carolina Rules of Civil Procedure.

*This Email address is to be used for all correspondence other than service.

MH™

**Mt. Hawley Insurance Company**
9025 N. Lindbergh Drive
Peoria, Illinois 61615
309-692-1000

The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.

# Windstorm or Hail Policy Declarations

**Policy No.** MWH0080435

**Named Insured and Mailing Address:**
Carteret Investment Associates, PA
3714 Guardian Avenue
Morehead City, NC 28557

**Agent/Broker and Mailing Address:**
Risk Placement Services, Inc.
Georgia 400 Center
2400 Lakeview Dr, Suite 675
Alpharetta, GA 30009

**Policy Period:** From 04/01/2018 to 04/01/2019 at 12:01 A.M. Standard Time at your mailing address shown above.

**DESCRIPTION OF PREMISES**

Refer to CPR 2162, Specified Limits Endorsement

**CAUSES OF LOSS:** Windstorm or Hail

**LIMITS OF INSURANCE**

**Total coverage (limit) applicable Limit** $12,533,438

Limitation applying to the following:

Business Income/ Rental Value (with Extra Expense) Monthly Limit of Indemnity 1/12

Refer to CPR 2162, Specified Limits Endorsement

**Per Occurrence Loss Limit**

At no time will we pay more than $12,533,438 for a loss due to a single occurrence or event.

**DEDUCTIBLE(S):** Refer to CPR 2218, Declarations - Deductible Addendum

**FORMS MADE A PART OF THIS POLICY AT TIME OF ISSUE:** See CPR 2150, Applicable Forms & Endorsements

| | |
|---|---|
| **PCA Fees** | $ 150 |
| **Total Premium** | $ 37,800 |
| **Amount Payable At Inception** | $ 37,950 |

| | |
|---|---|
| Premium | : $ 37,800.00 |
| Carrier Fee | : $ 150.00 |
| Broker Fee - RPS | : $ 500.00 |
| NC Surplus Lines Tax | : $ 1,897.50 |
| NC Stamping Office Fee | : $ 151.80 |
| Total Charges | : $ 40,499.30 |

To Report a Loss
- Dial toll-free #1 (844)777-8323 or visit our
- Website: https://my.rpsins.com/claimsfnol
- Contact Insurer directly (see policy section)

RPSROS/SC/2018.06.12

Authorized Signature

CN 4/18/2018

WHPR 100 (02/04)

EXHIBIT
1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DECLARATIONS - DEDUCTIBLE ADDENDUM

The following deductible wording is in addition to all other deductible wording found elsewhere in this policy. All other deductible wording found in and made a part of this policy also applies. Each claim for loss or damage will be adjusted separately.

**PERIL DEDUCTIBLE(S)**

$50,000 Per Occurrence for All Covered Perils, except:
2.00% of the Total Insurable Values Per Location (including time element if applicable) at the time of loss or damage subject to a minimum of $50,000 Per Occurrence for Named Storm

Total Insurable Values is defined as the full value of covered property, including time element if applicable, subject to the valuation terms and conditions of the policy. Total Insurable Values are calculated at the time of loss or damage.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIFIED LIMITS ENDORSEMENT

| Prem./Loc. No. | Bldg. No. | Limit of Insurance | Type of Coverage | Coins. Percent | Val.* | Description & Location of Property Covered |
|---|---|---|---|---|---|---|
| 00001 | 001 | $7,155,555 | Building | 80% | RCV | Built: 1995, Masonry Non-Combustible<br>3714 Guardian Ave<br>Morehead City, NC 28557<br>Office |
| 00001 | 001 | $300,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 1995, Masonry Non-Combustible<br>3714 Guardian Ave<br>Morehead City, NC 28557<br>Office |
| 00001 | 001 | $837,147 | Business Personal Property | 80% | RCV | Built: 1995, Masonry Non-Combustible<br>3714 Guardian Ave<br>Morehead City, NC 28557<br>Office |
| 00002 | 001 | $470,080 | Building | 80% | RCV | Built: 2000, Joisted Masonry<br>221 Professional Circle<br>Morehead City, NC 28557<br>Office |
| 00002 | 001 | $100,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 2000, Joisted Masonry<br>221 Professional Circle<br>Morehead City, NC 28557<br>Office |
| 00002 | 001 | $43,000 | Business Personal Property | 80% | RCV | Built: 2000, Joisted Masonry<br>221 Professional Circle<br>Morehead City, NC 28557<br>Office |
| 00003 | 001 | $100,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 2000, Joisted Masonry<br>534 N 35th St<br>Morehead City, NC 28557<br>Office |
| 00003 | 001 | $167,828 | Business Personal Property | 80% | RCV | Built: 2000, Joisted Masonry<br>534 N 35th St<br>Morehead City, NC 28557<br>Office |

* Valuation. Indicate: ACV (Actual Cash Value), ALS (Actual Loss Sustained), RCV (Replacement Cost Value), SP (Selling Price) or SV (Stated Value).

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIFIED LIMITS ENDORSEMENT

| Prem./Loc. No. | Bldg. No. | Limit of Insurance | Type of Coverage | Coins. Percent | Val.* | Description & Location of Property Covered |
|---|---|---|---|---|---|---|
| 00004 | 001 | $100,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 1990, Joisted Masonry 775 West Corbett Ave Swansboro, NC 28584 Office |
| 00004 | 001 | $164,800 | Business Personal Property | 80% | RCV | Built: 1990, Joisted Masonry 775 West Corbett Ave Swansboro, NC 28584 Office |
| 00005 | 001 | $540,800 | Building | 80% | RCV | Built: 1980, Frame 3700 Symi Circle Morehead City, NC 28557 Office |
| 00005 | 001 | $100,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 1980, Frame 3700 Symi Circle Morehead City, NC 28557 Office |
| 00005 | 001 | $44,228 | Business Personal Property | 80% | RCV | Built: 1980, Frame 3700 Symi Circle Morehead City, NC 28557 Office |
| 00006 | 001 | $100,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 2013, Joisted Masonry 2145 Country Club Rd Jacksonville, NC 28456 Office |
| 00006 | 001 | $170,000 | Business Personal Property | 80% | RCV | Built: 2013, Joisted Masonry 2145 Country Club Rd Jacksonville, NC 28456 Office |
| 00007 | 001 | $1,640,000 | Building | 80% | RCV | Built: 1986, Frame 306 Medical Park Ct Morehead City, NC 28557 Office |

* Valuation. Indicate: ACV (Actual Cash Value), ALS (Actual Loss Sustained), RCV (Replacement Cost Value), SP (Selling Price) or SV (Stated Value).

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.


Case 4:21-cv-00157-FL Document 1-1 Filed 10/21/21 Page 20 of 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIFIED LIMITS ENDORSEMENT

| Prem./Loc. No. | Bldg. No. | Limit of Insurance | Type of Coverage | Coins. Percent | Val.* | Description & Location of Property Covered |
|---|---|---|---|---|---|---|
| 00007 | 001 | $100,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 1986, Frame<br>306 Medical Park Ct<br>Morehead City, NC 28557<br>Office |
| 00008 | 001 | $300,000 | Building | 80% | RCV | Built: 1982, Frame<br>3726 Guardian Ave<br>Morehead City, NC 28557<br>Apartment |
| 00008 | 001 | $100,000 | Business Income/ Rental Value (with Extra Expense) | N/A | ALS | Built: 1982, Frame<br>3726 Guardian Ave<br>Morehead City, NC 28557<br>Apartment |

* Valuation. Indicate: ACV (Actual Cash Value), ALS (Actual Loss Sustained), RCV (Replacement Cost Value), SP (Selling Price) or SV (Stated Value).

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPLICABLE FORMS & ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.

| | |
|---|---|
| CPR-2218(11/04) | Declarations - Deductible Addendum |
| ILF-0001C(04/16) | Signature Page |
| CPR-2162(01/02) | Specified Limits Endorsement |
| WHPR-101(12/16) | Windstorm Or Hail Policy |
| CPR-2274(04/12) | Minimum Earned Premium Endorsement |
| CPR-2276(04/12) | Non-Payment Of Premium |
| CPR-2282(02/15) | Exclusion Of Cosmetic Damage To Roof Surfacing |
| CPR-2283(02/15) | Actual Cash Value For Roof Surfacing |
| CPR-2188(12/10) | Exclusion of Certain Computer Related Losses |
| CPR-2193(02/02) | Business Income/Extra Expense Endorsement |
| CPR-2269(06/09) | Asbestos Exclusion |
| CPR-2291(08/15) | Named Storm Definition |
| CPR-2295(02/16) | Windstorm or Hail Loss Reporting Limitation Addendum |
| RIL-099(07/16) | Service of Suit Endorsement |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

# WINDSTORM OR HAIL POLICY

## 1. AGREEMENT

We will pay for direct physical loss or damage to Covered Property Caused by or resulting from a Covered Cause Of Loss.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

In return for your payment of the required premium, we provide the coverage described herein at the locations named in the Declarations and/or the endorsed Schedule of Locations, subject to all the terms of this policy. This includes the Declarations, as well as any endorsements and schedules attached to and made a part of this policy.

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks.

## 2. COVERED PROPERTY

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations, from the peril(s) of windstorm and/or hail.

Covered Property, as used in this policy, means the type of property described in this section if a Limit of Insurance is shown in the Declarations for that type of property.

**A.** Buildings And Structures, meaning:

1. Additions;
2. Fixtures;
3. Machinery and equipment if the machinery and equipment is a permanent part of a covered building or structure.

**B.** Business Personal Property, meaning:

1. Furniture and fixtures;
2. Machinery and equipment;
3. "Stock";
4. All other personal property owned by you and used in your business;
5. Improvements and betterments meaning fixtures, alterations, installations or additions comprising part of a building(s) occupied but not owned by you and made at your expense.

## 3. LIMITS OF INSURANCE

**A.** All windstorm or hail loss or damage, caused by a distinct, single incident of such perils, is considered an occurrence. An occurrence is limited to the total of all losses, damages, or expenses sustained or commencing during a continuous 144 hour period. You may decide when the 144 hour period begins; however, we will not pay for loss or damage occurring before the effective date of this policy, or for any loss occurring after the expiration date of this policy.

B. If this policy includes both property damage and business interruption, the amounts stated in the Declarations under Limits of Insurance will be the maximum amounts collectible under this policy for loss or damage resulting from the perils described regardless of whether the loss involves property damage alone or both property damage and business interruption.

C. An aggregate applies to the Limits of Insurance if an amount for an aggregate is shown in the Declarations. We will not, in any case, exceed this limit or amount in one disaster, casualty, or event, no matter how many locations are involved.

D. The premium for this policy is based upon the latest statement of values on file with us, or attached to this policy. In the event of loss hereunder, our liability will be limited to the least of the following;

1. The actual adjusted amount of loss; or

2. The Limits of Insurance or amount of insurance per occurrence shown in the Declarations page of this policy or endorsed onto this policy but will not exceed the aggregate limit, if stated; or

3. The stated values for the specific property involved in the loss as shown on the latest statement of values on file with us.

## 4. COVERED CAUSE OF LOSS

Covered Cause of Loss, for purposes of this policy, means physical loss of or damage to Covered Property at the premises described in the Declarations, for the peril windstorm or hail.

Covered Cause of Loss does not mean:

A. Frost or cold weather;

B. Ice (other than hail), snow or sleet, whether driven by wind or not;

C. Loss or damage to the interior of any building caused by rain, snow, sand, dust, or water whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand, dust, or water enters;

D. Flood, surface water, waves, tides, tidal waves, over-flow of any body of water, or their spray, all whether driven by wind or not;

E. Mudslide or mudflow;

F. Water that backs up from a sewer or drain; or

G. Water under the ground surface pressing on, or flowing or seeping through;

1. Foundations, walls, floors or paved surfaces;

2. Basements, whether paved or not; or

3. Doors, windows or other openings.

## 5. PROPERTY NOT COVERED

Covered Property does not include:

A. Accounts, bills, deeds, currency, money, notes, securities, food stamps or other evidences of debt, lottery tickets not held for sale, original drawings and specifications, letters of credit, passports, tickets or valuable papers, unless specifically endorsed;

B. Animals, including birds and fish;

C. Growing plants or shrubs (except when held for sale, or when used for decorative purposes inside buildings), grain, hay, straw or other crops when outdoors;

D. Motor vehicles licensed or designed principally for highway use, watercraft, aircraft, motorcycles, motor scooters and other similar vehicles licensed or designed principally for highway use;

E. Contraband, or property in the course of illegal transportation or trade;

F. Bridges, roadways, walks, patios or other paved surfaces;

G. Land, including land on which the property is located, land value, growing crops or lawns, or the cost of excavations, grading, or filling;

H. Underground or surface water;

I. Property you have sold after it has been delivered. This includes property sold under conditional sales, trust agreements, installment payments or other deferred payment plans;

J. Foundations of buildings, underground pipes, flues or drains;

K. Retaining walls, pilings, piers, wharves or docks;

L. Fences, radio or television antennas, including their lead-in wiring, masts or towers, signs (other than signs attached to buildings);

M. Power transmission and/or feeder lines not on the insured premises;

N. Awnings, cloth, screening, or shade cover, cabanas, pools, bulkheads, smokestacks, or satellite dishes;

O. Electronic data processing equipment including computers, electronic accounting machines, all supporting machinery, magnetic tapes, discs, cards, any storage device and all software including procedures, programs or source material of any kind unless specifically endorsed to this policy;

P. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems;

Q. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

R. Contractor's equipment;

S. Jewelry, watches, pearls, precious and semi-precious stones, gold, silver, platinum, other precious metals or alloys, bullion, furs, and articles trimmed with fur;

T. Fine arts, meaning paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" furniture, "antique" jewelry, bric-a-brac, porcelains, and similar property of rarity, historical value, or artistic merit;

U. Property in transit; and/or

V. Property in the course of construction, including construction materials or supplies unless specifically endorsed to this policy.

6. **EXCLUSIONS**

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

**A.** Property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutant," or contaminants;

1. At or from premises owned, leased, rented or occupied by you,

2. At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste,

3. Which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for you or any person or organization for whom you may be legally responsible, or,

4. At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations;

   a. If the "pollutants" are brought on or to the site or location in connection with such operations, or

   b. If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the "pollutants";

**B.** Any loss, costs or expense arising out of any governmental direction or request that you test for, monitor, clean up, treat, remove, detoxify or neutralize "pollutants" or in any way respond to or assess the effects of "pollutants";

This includes loss or damage caused by or resulting from contributing to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of contaminants and/or pollutants, all of which direct or indirect, proximate or remote, or in whole or in part, caused by, contributed to, or aggravated by any damage insured by the policy.

**C.** Enforcement of any ordinance, law or code regulating the use, construction, or repair of any property; or requiring the tearing down of any property, including the cost of removing its debris, unless specifically endorsed to this policy. This exclusion applies whether the loss results from an ordinance or law that is enforced even if the property has not been damaged; or the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, following a physical loss to that property;

**D.** Increase of loss caused by or resulting from delay in repair or rebuilding;

**E.** Seizure or destruction of property by order of governmental authority;

**F.** Nuclear reaction or nuclear radiation or radioactive contamination, however caused;

**G.** Earth movement including landslide, earth sinking, subsidence, earth rising or shifting;

**H.** Weather conditions when your Covered Property is left in the open or not contained in buildings or permanent foundations;

**I.** Disappearance of property or loss or shortage of property disclosed on taking inventory, pilferage, burglary, larceny, theft or attempted theft;

**J.** Delay, loss of market, loss of use, business interruption, or consequential loss of any nature; unless specifically insured in the Declarations;

**K.** Business income or extra expenses of any kind unless specifically insured in the Declarations;

L. Loss due to inability to ingress or egress Covered Property; and/or

M. Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

## 7. ADDITIONAL COVERAGES

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

### A. Debris Removal

1. We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 90 days of the date of direct physical loss or damage.

2. This coverage does not apply to costs to:

   a. Extract "pollutants" from land or water; or

   b. Remove, restore or replace polluted land or water.

3. The most we will pay under this Additional Coverage is the lesser of $10,000 or 25% of:

   a. The amount we pay for the direct physical loss of or damage to Covered Property; plus

   b. The deductible in this policy applicable to that loss or damage.

### B. Preservation of Property

If it is necessary to move Covered Property to preserve it from loss by a Covered Cause of Loss, we will pay for any direct physical loss to that property while it is being moved or while temporarily stored at another location.

## 8. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the policy form. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Stated Amount valuation. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

All claims for loss or damage arising from one occurrence will be considered one claim and the applicable deductible will be applied to the adjusted amount of the claim. Occurrence means loss or damage caused by a distinct, single incidence of a covered peril(s).

## 9. LOSS CONDITIONS

The following conditions apply in addition to all other conditions of this policy:

### A. Abandonment

There can be no abandonment of any property to us.

**B. Appraisal**

If you and we do not agree on the value of the property or the amount of loss, within 60 days after you receive proof of loss from us, either may make written demand for an appraisal of the loss. In this event, each party will select a competent, impartial appraiser. The two appraisers will then select an umpire. If the two appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. Agreement in writing by any two will determine the amount of loss.

Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**C. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following applies:

1. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property. Instead, we will determine the most we will pay using the following steps:

   a. Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

   b. Divide the Limit of Insurance of the property by the figure determined in Step **a.**;

   c. Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **b.**; and

   d. Subtract the deductible from the figure determined in Step **c.**.

   We will pay the amount determined in Step **d.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

2. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**D. Duties In The Event Of Loss Or Damage**

1. You must see that the following are done in the event of loss or damage to Covered Property:

   a. Notify the police if a law may have been broken.

   b. Give us or our agent prompt notice of the loss or damage. Include a description of the property involved.

   c. As soon as possible, give us a description of how, when and where the loss or damage occurred.

   d. You must take all reasonable steps to protect Covered Property at and after an insured loss to avoid further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance. However, we will only pay for subsequent loss or damage resulting from a Covered Cause of Loss. If feasible, set aside the damaged property in the best possible order for examination.

e. At our request, give us complete inventories of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed.

f. As often as reasonably required, allow us to inspect the property proving the loss or damage and examine your books and records. Also allow us to take samples of damaged and undamaged property for inspection, testing and analysis, and allow us to make copies from your books and records.

g. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 90 days after our request.

h. Cooperate with us in the investigation or settlement of the claim.

i. Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our written consent.

j. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

2. We may examine any insured under oath, while not in the presence of any other insured at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**E. Loss Payment**

1. In the event of loss or damage covered by this policy, at our option, we will either:

a. Pay the value of lost or damaged property;

b. Pay the cost of repairing or replacing the lost or damaged property, subject to **2.** below;

c. Take all or any part of the property at an agreed or appraised value; or

d. Repair, rebuild or replace the property with other property of like kind and quality, subject to **2.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this policy or any applicable provision which amends or supersedes the Valuation Condition.

2. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

3. We will give you notice of our intentions within 30 days after we receive the sworn proof of loss.

4. We will not pay you if you have already collected the same amount from others.

5. We will not pay you more than your financial interest in the Covered Property.

6. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

7. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

8. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this policy and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

## F. Pair, Sets Or Parts

1. In case of loss or damage to any part of a pair or set we may:

   a. Repair or replace any part to restore the pair or set to its value before the loss or damage; or

   b. Pay the difference between the value of the pair or set before and after the loss or damage.

2. In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## G. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance in the Declarations of this policy.

## H. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

1. At actual cash value as of the time of loss or damage, except as provided in **2.** or **3.**, below.

   a. Actual Cash Value means the value of Covered Property at the time of the loss, with a deduction for depreciation.

   b. Actual Cash Value is determined by deducting the applicable depreciation from the replacement or repair cost of the damaged property. We will not pay more than what it will cost to repair, rebuild or replace the property with other property of like kind and quality. We will also not pay more than the amount shown in the Declarations under the Limits of Insurance.

2. If Replacement Cost (without deduction for depreciation) is designated in conjunction with a specific coverage on the Declarations Page, we will pay the cost of building repairs or replacement for that designated coverage.

   a. The value of Covered Property with the Replacement Cost option is the cost to repair, rebuild or replace the damaged or destroyed property. We will not pay more than the least of the following amounts:

      (1) The Limit of Insurance that applies to the damaged or destroyed property;

      (2) The cost to repair or replace with similar materials on the same site and used for the same purpose; or

      (3) The amount you actually spend to repair or replace the damage or destroyed property. In the event of loss, the value of property will be determined as of the time of loss.

      This provision does not apply to paragraph **b.** below.

   b. The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

   Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. You may make a claim for actual cash value before repair or replacement takes place, and within 180 days after the loss for the replacement cost. Repair or replacement must take place within 180 days after the loss in order for replacement cost valuation to apply.

c. Replacement Cost coverage does not apply to:

(1) Personal property of others;

Under the terms of this policy, tenants' improvements and betterments are not considered to be the personal property of others.

(2) Manuscripts; and/or

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

d. The cost of building repairs or replacement does not include the increased cost attributable to enforcement or any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundring; or

(3) Outdoor equipment or furniture.

e. "Stock" you have sold but not delivered. Such "stock" will be valued at selling price less discounts and expenses you otherwise would have had.

f. Glass at the cost of replacement with safety glazing material if required by law.

g. Tenant's Improvements and Betterments at:

(1) A proportion of you original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(2) Nothing if others pay for repairs or replacement.

3. If Stated Value is designated in conjunction with a specific coverage on the Declarations Page, we will pay the limit indicated for that designated coverage.

## 10. GENERAL CONDITIONS

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If we cancel this policy for nonpayment of premium, we will give you notice at least 10 days before the cancellation is effective. If we cancel this policy for any other reason, we will give you notice at least 30 days in advance of cancellation.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this Coverage at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning this policy, the Covered Property, your interest in the Covered Property, or a claim under this policy.

**D. Conformity With Statute**

When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

**E. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to one year afterward.

**F. Excess Insurance**

You may have excess insurance over the Limits of Insurance stated in this policy. Such excess insurance, if any, will not reduce any liability under this policy.

**G. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which make insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**H. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**I. Legal Action Against Us**

No one may bring a legal action against us under this policy unless:

1. There has been full compliance with all the terms of this policy; and

2. The action is brought within 2 years after you first have knowledge of the direct loss or damage.

**J. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**K. Other Insurance**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**L. Policy Period**

We pay for a covered loss that occurs during the policy period.

**M. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**N. Records And Inventory**

You must keep accurate books, records and accounts which include detailed and itemized inventory records of all Covered Property. Physical inventory must be taken periodically at intervals of not more than 12 months apart.

**O. Territorial Limits**

We cover property while in the United States of America, the District of Columbia, its territories and possessions, Canada, and Puerto Rico.

**P. Transfer Of Rights Of Recovery Against Others To Us**

If we pay for a loss, we may require you to assign to us your right of recovery against others. You must do all that is necessary to secure our rights. We will not pay for a loss if you impair this right to recover. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**Q. Transfer Of Your Rights And Duties Under This Policy**

You may not transfer your rights and duties under this policy without our written consent except in the case of death of an individual named insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## 11. DEFINITION

**A.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**B.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. It also includes any material which after its release, dispersal or discharge, can cause or threaten damage to human health and/or human welfare, or causes or threatens damage, deterioration, loss of value, marketability and/or loss of use, to insured property; including, but not limited to bacteria, fungi, virus, or hazardous substances as listed in the Federal Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976 and/or Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency.

**C.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Corporate Secretary

President & COO



Case 4:21-cv-00157-FL Document 1-1 Filed 10/21/21 Page 35 of 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

It is agreed that this policy does not insure against loss or damage arising from asbestos material, including but not limited to costs or expenses incurred by the Insured as a result of any of the following:

**(1)** asbestos material removal, containment, or other abatement;

**(2)** demolition or increased cost of construction, repair, debris removal, or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material; and/or

**(3)** any governmental direction or request declaring that such asbestos material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified;

Nor does any coverage provided by this policy apply to payment for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

# EXCLUSION OF CERTAIN COMPUTER RELATED LOSSES

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED. PLEASE READ IT CAREFULLY.**

**A.** We will not pay for loss or damage, whether direct or indirect, to "electronic data processing equipment":

**1.** Arising from "computer virus" and/or "computer hacking";

**2.** Caused by the transfer or delivery of covered property from a covered location or your computer to a person or place outside of a covered location on the basis of unauthorized or fraudulent instructions, including but not limited to instructions transmitted by a computer, whether or not owned by you, or via any telecommunications transmission method;

**3.** Arising from costs to research, replace or restore the information contained on electronic or magnetic media;

**4.** Arising from electrical disturbance including electrical or magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings;

**5.** Arising from power supply disturbance including interruption of power supply, power surge, blackout, or brownout;

**6.** During the period when your business is interrupted as a result of loss to your web site operation whether or not maintained or operated by you and whether or not located at the described premises;

**7.** Arising from the failure, malfunction or inadequacy of:

**a.** Such "electronic data processing equipment" whether belonging to you or to others;

**b.** Any products, and any services, data or functions that directly or indirectly use or rely on, in any manner, such "electronic data processing equipment" due to the inability to correctly recognize, process, distinguish, interpret, or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000; and/or

**8.** Arising from any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in this endorsement.

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

**B.** However, if direct physical loss or damage from a covered peril results, then subject to all of its terms and conditions, we will only pay for the resulting direct physical loss or damage.

**C.** Claims for resulting physical loss or damage at multiple locations will constitute a separate occurrence at each location.

**D. DEFINITIONS**

**1.** "Computer virus" means the introduction into a computer of any self-replicating electronic data processing code or other code that is intended to:

**a.** Result in the deletion, destruction, generation, or modification of data;

b. Alter, contaminate, corrupt, degrade, or destroy the integrity, quality, or performance of data;

c. Damage, destroy, or cause malfunction, inadequacy, degradation, or corruption of any hardware or processing, recording, or storage media used with hardware; or

d. Deny access to or services from your computer, your computer network or web site.

2. "Computer hacking" means an unauthorized intrusion by an individual or group of individuals, whether employed by you or not, into a computer or computer network that can:

   a. Result in the deletion, destruction, generation, or modification of data;

   b. Alter, contaminate, corrupt, degrade, or destroy the integrity, quality, or performance of data;

   c. Result in the scanning or copying of data;

   d. Cause damage, destruction, inadequacy, malfunction, degradation, or corruption of any hardware or processing, recording, or storage media used with hardware; or

   e. Result in the denial of access to or denial of services from your computer, your computer network, or web site.

3. "Electronic data processing equipment" includes the following items:

   a. Computer hardware, including microprocessors;

   b. Computer application software;

   c. Computer operating systems and related software;

   d. Computer networks;

   e. Microprocessors (computer chips) not part of any computer system;

   f. Any other computerized or electronic equipment or components; or

   g. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in items **a.** through **f.** above. This includes any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential problems with items listed in **a.** through **f.** above.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

# BUSINESS INCOME/EXTRA EXPENSE ENDORSEMENT

When made a part of this policy, this endorsement changes the definition of Covered Property to include coverage for Business Income and/or Extra Expense.

## A. COVERAGE

We will pay the actual and necessary Business Income and/or Extra Expense you sustain due to direct physical loss of or damage to property at premises described in the Declarations and for which a Business Income and/or Extra Expense Limit of Insurance is shown in the Declarations. If no limit is shown, this coverage does not apply. The loss or damage must be caused by or result from a peril not otherwise excluded. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

1. If you occupy only part of the site described above, your premises means:

   **a.** The portion of the building which you rent, lease or occupy; and

   **b.** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

2. Business Income means the:

   **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

   **b.** Continuing normal operating expenses incurred, including payroll.

   For manufacturing risks, Net Income includes the net sales value of production.

3. Business Income coverage is provided as described below for one or more of the following options as shown in the Declarations:

   **i.** Business Income only.

   **ii.** Rental Value only.

   **iii.** Business Income and Rental Value.

   If option **(i)** above is selected, the term Business Income will not include "Rental Value." If option **(ii)** above is selected, the term Business Income will mean "Rental Value" only. If option **(iii)** above is selected, the term Business Income will include "Rental Value."

   If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises that are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a peril not otherwise excluded. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

a. The portion of the building which you rent, lease or occupy; and

b. Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

4. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of damage to property:

a. To avoid or minimize the "suspension" of business and to continue "operations":

(1) at the described premises; or

(2) At replacement premises or at temporary locations, including:

(a) Relocation expenses; and

(b) Costs to equip and operate the replacement or temporary locations;

b. To minimize the "suspension" of business if you cannot continue "operations"; or

c. (1) To repair or replace any property; or

(2) To research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this policy.

B. LOSS CONDITIONS

The following Loss Conditions apply in addition to those found in the policy.

1. **Limits On Loss Payment**

We will not pay more for Extra Expense than the following percentages times the Limit of Insurance.

When the "period of restoration" is:

a. 30 days or less, 40% of the applicable limit.

b. 60 days or less, but more than 30 days, 80% of the applicable limit.

c. More than 60 days, 100% of the applicable limit.

2. **Loss Determination**

a. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration," once "operations" are resumed; and


Case 4:21-cv-00157-FL Document 1-1 Filed 10/21/21 Page 40 of 93

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All necessary expenses that reduce the Extra Expense otherwise incurred.

b. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the peril not otherwise excluded on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

c. We reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## C. DEFINITIONS

1. **"Finished Stock"** means stock you have manufactured. "Finished stock" also includes whiskey and alcoholic products being aged. "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

2. **"Operations"** means your business activities occurring at the described premises. "Operations" also means the tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

3. **"Period of Restoration"** means the period of time that:

a. Begins immediately after the time of direct physical loss or damage for Extra Expense coverage caused by or resulting from any peril not otherwise excluded at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

The expiration date of this policy will not cut short the "period of restoration."

4. **"Rental Value"** means the:

   a. Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

   b. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

   c. Fair rental value of any portion of the described premises that is occupied by you.

5. **"Suspension"** means the slowdown or cessation of your business activities; or that a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement changes Cancellation conditions elsewhere in the policy as follows:

If you cancel this policy, the earned premium will be calculated as follows:

**(1)** If the abbreviated term provides coverage for less than 50 days during the period June 1 through November 1, the premium earned for the policy term will be calculated as per the policy Cancellation terms but subject to a minimum earned premium of 35% of the annual policy premium or $13,230, whichever is greater.

**(2)** If the abbreviated term provides coverage for 50 or more days during the period June 1 through November 1, the premium earned for the policy term will be calculated as per the policy Cancellation terms but subject to a minimum earned premium of 100% of the annual policy premium or $37,800, whichever is greater.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-PAYMENT OF PREMIUM

Your failure to make a timely payment of any premium due either at inception of this policy or for any subsequent endorsement will be considered a request by you to us to cancel the policy.

If we cancel for non-payment of premium, the minimum earned premium, as determined by the Minimum Earned Premium Endorsement included in this policy, will be immediately due and payable.

At our discretion, we may consider reinstating coverage if you pay us the full amount of premium due prior to the effective date of cancellation.

However, payment of overdue premium by you will not guarantee the reinstatement of coverage. Should we decide not to reinstate coverage, any unearned premium will be refunded accordingly.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF COSMETIC DAMAGE TO ROOF SURFACING

**A.** The following applies with respect to loss or damage by wind and/or hail to any building and/or structure covered under this policy unless otherwise indicated below:

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail.

For the purpose of this endorsement:

1. Cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

2. Roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

Exceptions to the above are as follows:

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ACTUAL CASH VALUE FOR ROOF SURFACING

A. The following applies with respect to loss or damage by wind and/or hail to a building or structure as indicated below:

Applies to roof surfacing over 15 years old.

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

B. For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.


Case 4:21-cv-00157-FL Document 1-1 Filed 10/21/21 Page 46 of 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED STORM DEFINITION

The following definition is added to this policy:

"Named storm" means a weather-related event involving wind that has been assigned a formal name by the National Hurricane Center, National Weather Service, World Meteorological Organization or Central Pacific Hurricane Center. The term "named storm" includes any organized weather system with a defined surface circulation that has maximum sustained wind speeds of at least 39 miles per hour including tropical storms, hurricanes, tropical cyclones, typhoons and all resultant atmospheric disturbance and weather phenomena. Under the terms of this definition, a "named storm" begins at the time a warning is issued for the area in which the affected property is located and ends 24 hours after the termination of the last watch or warning issued for that area by one of the above referenced entities.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL LOSS REPORTING LIMITATION ADDENDUM

Regardless of anything to the contrary in the policy to which this endorsement is attached, the following limitations apply in reference to reporting of claims under this policy:

1. With respect to loss or damage caused by windstorm or hail, including any named storm, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim; and

2. Any legal action brought against us under the policy for loss or damage caused by windstorm or hail must be brought within the earlier of the following:

   a. Two years and one day from the date we accept or reject the claim; or

   b. Three years and one day from the date of the loss or damage that is the subject of the claim.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Mt. Hawley Insurance Company**
Peoria, Illinois 61615

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT ENDORSEMENT

It is understood and agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. The foregoing shall not constitute a waiver of the right of the Company to remove, remand or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state or United States pertinent hereto. In any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates Craig W. Kliethermes, President,

**Mt. Hawley Insurance Company**

9025 N. Lindbergh Drive, Peoria, Illinois 61615 as the person to whom the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: MWH0080435

**Mt. Hawley Insurance Company**
9025 N. Lindbergh Drive
Peoria, Illinois 61615

## ATTENTION POLICYHOLDER

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false, incomplete, or misleading information, or conceals information concerning any material fact thereto, commits a fraudulent insurance act, which is a crime punishable by incarceration, and shall also be subject to civil penalties.

# RPS Specialty Market Policy Notices
## For the Policy Holder and Retail Producer

This form is NOT a part of the insurance policy and does NOT amend policy wording, but is designed to be delivered when the policy is provided to the Policy Holder. When using "you" or "your" the form is addressing the Policy Holder; when using "Producer" it refers to the Retail Producing Entity and/or their production person; RPS is used for Risk Placement Services, Inc.

1) **Assignment**: This Policy or Certificate may not be assigned to another entity without the written consent of the Insurer. The policy wording should be reviewed carefully for this provision before any assignment attempt is made.
2) **Audits**: Many policies are based on factors that are auditable and the premium amended accordingly. The Producer should review any Audit Condition from the policy with you. The Producer is responsible for collecting any audit premiums due within 20 days of the billing, unless otherwise noted.
3) **Cancellation**: The policy has specific cancellation provisions that should be reviewed, and may be subject to special endorsements based on the State regulations. Flat Cancellations are not allowed. In order to cancel you need to make written request in advance of the requested effective date. The policy also contains provisions that establish minimum earned premiums, minimum and deposit premiums or fully earned premiums. Cancellation for non-payment of premium, including failure to pay outside financing, is generally considered to be at the request of the Insured and therefore subject to penalties as described in the policy. If a Notice of Cancellation is sent for non-payment, there may be a Service Fee (not a premium) required to affect a rescission of the Notice. The amount of the fee will typically be shown on the Notice, and must be paid by the party requesting the rescission. The policy may not continue if the Service Fee is not paid on time.
4) **Certificates of Insurance**: You may request Certificates of Insurance from the Producer that placed your insurance policy. Such Certificates cannot contain wording contrary to the Policy Coverage as provided. Additional Insureds, often requested with Certificates of Insurance, generally require an Additional Premium, and can only be added after the Insurer knows the insurable interest and accepts the entity as being added to the policy. Producers can access the RPS website to obtain many Certificates or make special coverage change requests via endorsement as needed to satisfy certain Certificate Holders, keeping in mind such additional coverages may require additional premium charges.
5) **Claims Reporting**: The policy contains specific address, phone, or website information as to where and how to report a claim. Most Insurers maintain 24/7 service of such numbers. Your Producer may also assist you with filing a claim, and they have access to the RPS website and/or claim reporting numbers to do so, however, you should review the claim reporting provision of the policy. It is very important to report claims in a timely manner.
6) **Coverage**: This policy may not be as broad in scope as the policy it replaces nor as the coverage requested. This policy was issued to reflect the coverage as quoted by RPS to your Producer. Your Producer should review the entire contract of insurance with you.
7) **Endorsements**: Additional coverage, changes or revisions are subject to acceptance by the Insurer and must be endorsed to the policy. The Producer has no authority to endorse or change the policy, but should submit in writing the requested changes to RPS who will work with the Insurer to effect endorsements acceptable to the Insurer.
8) **Fees**: Unless otherwise noted, all Fees are fully earned at the time of placement of this insurance and are not subject to pro-rata return if the policy is cancelled.
9) **Financing**: Any premium financing is a contractual relationship between the Premium Finance Company (PFC) and the Borrower. The Insurer, Agents, nor Brokers are parties to the Finance Agreement, and policy wording will not be amended to any contractual provisions therein. All such contracts must be set up showing the Insurer's Name c/o Risk Placement Services, Inc., using the RPS Branch address where the policy was placed. Once financed, it is the duty of the Producer to inform the PFC of any changes to the contract, additional or return premiums, and cancellation of the policy.
10) **Forms Signed & Returned**: The policy may have been delivered with forms that require the signature of the Named Insured. Such forms should be signed and returned to the Producer immediately, so they can in turn provide them to RPS, who will post them to the Insurer files.
11) **Inspections**: To keep coverage in force, an inspection may be required, and provisions for this are in the policy. Producer should review with Policy Holder the need to arrange site appointments with inspectors, who may be vendors.
12) **Producer Not Agent**: The Producer is a representative of the Policy Holder / Named Insured, and as such does not act as an Agent of the Insurer nor of RPS.

MH™

**Mt. Hawley Insurance Company**
Peoria, Illinois 61615

# NOTICE TO POLICYHOLDERS

## REGARDING THE UNITED STATES TREASURY DEPARTMENT – OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

This Policyholder Notice does not provide coverage nor can it be construed to replace any provisions of your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered by your policy. This Notice should only be used to provide information concerning the possible impact of your insurance coverage as it relates to directives issued by OFAC.

**PLEASE READ THIS NOTICE CAREFULLY.**

OFAC administers and enforces economic and trade sanctions and places restrictions on certain transactions. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation. OFAC has identified and named numerous foreign agents, front organizations, terrorists, terrorist organizations, and narcotics traffickers, among others, as "Specially Designated Nationals and Blocked Persons." The complete list can be found on the United States Treasury website – http://www.treas.gov/ofac.

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance contract is considered a blocked or frozen contract and will be considered null and void. When an insurance policy is considered to be a blocked or frozen contract, all provisions of this insurance will be immediately subject to OFAC, and neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.

MagMutual® Insurance Company

# POLICY BANNER PAGE

Business Owners
4/1/18-4/1/19

**POLICY NUMBER:** BOP 0006799 02
**INSURED:** Carteret Surgical Associates, PA

Carteret Surgical Associates, PA
3714 Guardian Ave., Ste. E
Morehead City, North Carolina 28557

EXHIBIT
Blumberg No. 5208
2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESSOWNERS POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW.

| Policy Number | Policy Changes Effective | Company |
|---|---|---|
| BOP 0006799 02 | April 1, 2018 | MAG Mutual Insurance Company |
| Named Insured<br>Carteret Surgical Associates, PA | | Authorized Representative<br>MAG Mutual Insurance Agency, LLC |

**Changes**

Amended the business personal property limit to $500,000 for the location at 306 Medical Park Ct., Morehead City, NC.



© ISO Properties, Inc., 2001

## POLICY AMOUNT AND PREMIUM ADJUSTMENT

| Coverage Description | Limits of Insurance | | Premiums | | ☐ Add'l. Premium<br>☐ Return Premium |
|---|---|---|---|---|---|
| | Previous Limit of Insurance | New Limit of Insurance | Previous Premium | New Premium | |
| | $ | $ | $ | $ | $ |
| | | | | | |
| | | | | | |
| | | | | | |

## OPTIONAL COVERAGES

| The following optional coverages are added under this policy when designated by an "X" in the box(es) shown below. | | | ☐ Add'l. Premium |
|---|---|---|---|
| | Limits of Insurance | | ☐ Return Premium |
| ☐ Outdoor Signs | $ | | $ |
| | | | |
| ☐ Burglary and Robbery (Named Peril Endorsement only)<br>or<br>☐ Money or Securities (Special Form only) | $<br>$ | Inside the Premises<br>Outside the Premises | $<br>$ |
| ☐ Employee Dishonesty | $ | each occurrence | $ |
| Mechanical Breakdown<br>☐ Boiler and Pressure Vessels<br>☐ Air Conditioning Units | | | $ |
| | | | |

**TOTAL PREMIUM ADJUSTMENTS**

PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE

| ADDITIONAL | RETURN |
|---|---|
| $ | $ |

**REMOVAL PERMIT** If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal. Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed. This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location.

Authorized Representative Signature


© ISO Properties, Inc., 2001

**MagMutual** Insurance Company
P.O. Box 52979
Atlanta, Ga 30355-0979
404-842-5600 800-282-4882

# BUSINESSOWNERS DECLARATIONS

| Policy Number | Policy Period From | To |
|---|---|---|
| BOP 0006799 02 | 04/01/2018 | 04/01/2019 |

12:01 A.M. Standard Time at the described premises.

**Transaction**

AMENDED DECLARATION Effective: 04/01/2018

| Named Insured and Address | Producer |
|---|---|
| Carteret Surgical Associates, PA<br>3714 Guardian Ave., Ste. E<br>Morehead City, North Carolina 28557 | MAG MUTUAL INSURANCE COMPANY 0002000<br>P.O. BOX 52979<br>ATLANTA, GA 30355-0979<br>Telephone: 800-282-4882 |

Type Of Business Corporation

In Return For The Payment Of The Premium, And Subject To All The Terms Of This Policy, We Agree With You To Provide The Insurance As Stated In This Policy.

## Premises / Buildings

Described Premises:

| Prem. | Bldg. | Location |
|---|---|---|
| No. 1 | No. 1 | Carteret Surgical Associates, 3714 Guardian Ave.<br>Morehead City NC 28557 |

Construction Type MASONRY NON-COMBUSTIBLE Sprinkler No Territory 6 Prot. Class 3 Class Code 65121
Business Description BUILDING/SATELLITE COVERAGE
Total Premium for this Location $7,628

| | | |
|---|---|---|
| No. 2 | No. 1 | Carteret Surgical Associates, 534 N. 35th St.<br>Morehead City NC 28557 |

Construction Type NON-COMBUSTIBLE Sprinkler No Territory 6 Prot. Class 3 Class Code 65120
Business Description OFFICE (LESSEE ONLY/CONTENTS)
Total Premium for this Location $334

| | | |
|---|---|---|
| No. 3 | No. 1 | Carteret Surgical Associates, 221-B Professional Circle<br>Morehead City NC 28557 |

Construction Type JOISTED MASONRY Sprinkler No Territory 6 Prot. Class 3 Class Code 65121
Business Description BUILDING/SATELLITE COVERAGE
Total Premium for this Location $755

| | | |
|---|---|---|
| No. 4 | No. 1 | Carteret Surgical Associates, 775-2 West Corbett Ave.<br>Swansboro NC 28584 |

Construction Type JOISTED MASONRY Sprinkler No Territory 6 Prot. Class 4 Class Code 65120
Business Description OFFICE (LESSEE ONLY/CONTENTS)
Total Premium for this Location $349

| | | |
|---|---|---|
| No. 5 | No. 1 | Carteret Surgical Associates, 105 Professional Park<br>Beaufort NC 28516 |

Construction Type NON-COMBUSTIBLE Sprinkler No Territory 6 Prot. Class 5 Class Code 65120
Business Description OFFICE (LESSEE ONLY/CONTENTS)
Total Premium for this Location $71

Countersigned Date 06/18/18

Authorized Signature

BOPDEC 08/15 **Issued Date:** 06/18/18

MagMutual Insurance Company

P.O. Box 52979
Atlanta, Ga 30355-0979
404-842-5600 800-282-4882

# BUSINESSOWNERS DECLARATIONS

| Policy Number | Policy Period From | To |
|---|---|---|
| BOP 0006799 02 | 04/01/2018 | 04/01/2019 |
| | 12:01 A.M. Standard Time at the described premises. | |

**Transaction**

AMENDED DECLARATION Effective: 04/01/2018

| Named Insured and Address | Producer |
|---|---|
| Carteret Surgical Associates, PA<br>3714 Guardian Ave., Ste. E<br>Morehead City, North Carolina 28557 | MAG MUTUAL INSURANCE COMPANY 0002000<br>P.O. BOX 52979<br>ATLANTA, GA 30355-0979<br><br>Telephone: 800-282-4882 |

**Premises / Buildings Continued . . .**

Described Premises:

Prem. No. 6 — Bldg. No. 1 — Location: Carteret Surgical Associates, Morehead City, 3700 Symi Circle NC 28557

Construction Type FRAME — Sprinkler NO — Territory 6 — Prot. Class 3 — Class Code 65121
Business Description BUILDING/SATELLITE COVERAGE
Total Premium for this Location $1,275

No. 7 — No. 1 — Carteret Surgical Associates, Jacksonville, 2145 Country Club Road NC 28546

Construction Type NON-COMBUSTIBLE — Sprinkler NO — Territory 6 — Prot. Class 3 — Class Code 65121
Business Description BUILDING/SATELLITE COVERAGE
Total Premium for this Location $5,076

No. 8 — No. 1 — Carteret Surgical Associates, Morehead City, 306 Medical Park Ct. NC 28557

Construction Type JOISTED MASONRY — Sprinkler NO — Territory 6 — Prot. Class 3 — Class Code 65121
Business Description BUILDING/SATELLITE COVERAGE
Total Premium for this Location $3,232

No. 9 — No. 1 — Carteret Surgical Associates, Morehead City, 3726 Guardian Ave. NC 28557

Construction Type FRAME — Sprinkler NO — Territory 6 — Prot. Class 3 — Class Code 65132
Business Description APARTMENT BUILDING
Total Premium for this Location $531

**Property Coverage**

Property Deductible: $5,000 Optional Coverage/Glass Deductible: $500

Limits of Insurance for: Business Income & Extra Expense - 12 months actual loss sustained or Refer to Forms & Endorsements

| Premises Number | Building Number | Building | Buildings Valuation | Automatic Increase Building Limit (percentage) | Business Personal Property |
|---|---|---|---|---|---|
| 1 | 1 | 9,305,338 | RC | 2% | 2,066,433 |
| 2 | 1 | | | | 209,785 |

Countersigned Date 06/18/18

Authorized Signature

BOPDEC 08/15 Issued Date: 06/18/18

MagMutual Insurance Company

P.O. Box 52979
Atlanta, Ga 30355-0979
404-842-5600 800-282-4882

# BUSINESSOWNERS DECLARATIONS

| Policy Number | Policy Period From | To |
|---|---|---|
| BOP 0006799 02 | 04/01/2018 | 04/01/2019 |
| | 12:01 A.M. Standard Time at the described premises. | |

**Transaction**

AMENDED DECLARATION Effective: 04/01/2018

| Named Insured and Address | Producer |
|---|---|
| Carteret Surgical Associates, PA<br>3714 Guardian Ave., Ste. E<br>Morehead City, North Carolina 28557 | MAG MUTUAL INSURANCE COMPANY 0002000<br>P.O. BOX 52979<br>ATLANTA, GA 30355-0979<br><br>Telephone: 800-282-4882 |

## Property Coverage

Property Deductible: Optional Coverage/Glass Deductible:

Limits of Insurance for: Business Income & Extra Expense - 12 months actual loss sustained or Refer to Forms & Endorsements

| Premises Number | Building Number | Building | Buildings Valuation | Automatic Increase Building Limit (percentage) | Business Personal Property |
|---|---|---|---|---|---|
| 3 | 1 | 611,339 | RC | 2% | 53,729 |
| 4 | 1 | | | | 206,000 |
| 5 | 1 | | | | 36,050 |
| 6 | 1 | 703,310 | RC | 2% | 180,285 |
| 7 | 1 | 5,500,000 | RC | 2% | 337,489 |
| 8 | 1 | 1,706,256 | RC | 2% | 500,000 |
| 9 | 1 | 270,296 | RC | 2% | 29,600 |

## Policy Level Optional Coverages

| Applicable Optional Coverages | Limits of Insurance |
|---|---|
| Hired Auto Liability | 1,000,000 |
| Non-Owned Auto Liability | 1,000,000 |

OTHER COVERAGES - Shown by endorsement

## Liability And Medical Expenses

Except for Damage To Premises Rented to You, each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to Section II - Liability in Businessowners Coverage Form and any attached endorsements.

| | Limits of Insurance | |
|---|---|---|
| LIABILITY AND MEDICAL EXPENSES | 1,000,000 | per occurrence |
| MEDICAL EXPENSES | 10,000 | each person |

**TOTAL POLICY PREMIUM** $19,179.00

## Location Level Optional Coverages

Applicable Optional Coverages Limits of Insurance

OTHER COVERAGES - Shown by endorsement

## Forms and Endorsements

Countersigned Date 06/18/18

Authorized Signature

BOPDEC 08/15 Issued Date: 06/18/18

MagMutual Insurance Company

P.O. Box 52979
Atlanta, Ga 30355-0979
404-842-5600 800-282-4882

# BUSINESSOWNERS DECLARATIONS

| Policy Number | Policy Period From | To |
|---|---|---|
| BOP 0006799 02 | 04/01/2018 | 04/01/2019 |

12:01 A.M. Standard Time at the described premises.

**Transaction**

AMENDED DECLARATION Effective: 04/01/2018

| Named Insured and Address | Producer |
|---|---|
| Carteret Surgical Associates, PA<br>3714 Guardian Ave., Ste. E<br>Morehead City, North Carolina 28557 | MAG MUTUAL INSURANCE COMPANY 0002000<br>P.O. BOX 52979<br>ATLANTA, GA 30355-0979<br>Telephone: 800-282-4882 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| BP EBS | (08/15) | BP IN 01 | (07/02) | BP MM 02 | (08/13) | BP MM 03 | (11/07) | BP MM 05 | (01/04) |
| BP MM 10 | (08/15) | BP MM 17 | (08/15) | BP MM 18 | (08/13) | BP MM 19 | (08/13) | BP NTC | (08/15) |
| BP 00 03 | (07/02) | BP 01 16 | (07/02) | BP 04 16 | (07/02) | BP 04 17 | (07/02) | BP 04 39 | (07/02) |
| BP 04 40 | (07/02) | BP 04 46 | (11/02) | BP 04 54 | (07/02) | BP 04 56 | (07/02) | BP 04 57 | (07/02) |
| BP 04 83 | (07/02) | BP 05 01 | (07/02) | BP 05 14 | (01/03) | BP 05 15 | (01/15) | BP 05 23 | (01/15) |
| BP 05 47 | (01/06) | BP 05 76 | (11/02) | BP 05 77 | (11/02) | BP 12 14 | (07/02) | HSB-PN | (12/09) |
| IL MM 01 | (01/05) | IL N 001 | (09/03) | IL P 001 | (01/04) | IL P 023 | (12/12) | BP MM 04 | (01/04) |
| BP MM 08 | (10/09) | BP 04 04 | (07/02) | BP 04 15 | (07/02) | BP 04 55 | (07/02) | BP 04 61 | (07/02) |
| BP 04 98 | (07/02) | BP 12 01 | (07/02) | BP 12 03 | (07/02) | PN-WHE-NC | (04/05) | | |

**Policy Interests**

ADDITIONAL INSURED LOC. 1
Wells Fargo Bank, NA
ISAOA, ATIMA
.O. Box 2705
inston Salem, North Carolina 27102

ADDITIONAL INSURED LOC. 1
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

ADDITIONAL INSURED LOC. 2
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

ADDITIONAL INSURED LOC. 3
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

ADDITIONAL INSURED LOC. 4
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

ADDITIONAL INSURED LOC. 5
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

ADDITIONAL INSURED LOC. 6
First Citizens Bank and Trust Company
c/o Loan Servicing Dept., DAC 20
P.O. Box 26592
Raleigh, North Carolina 27611

ADDITIONAL INSURED LOC. 6
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

Countersigned Date 06/18/18

Authorized Signature

BOPDEC 08/15 Issued Date: 06/18/18

MagMutual Insurance Company

P.O. Box 52979
Atlanta, Ga 30355-0979
404-842-5600 800-282-4882

# BUSINESSOWNERS DECLARATIONS

| Policy Number | Policy Period From | To |
|---|---|---|
| BOP 0006799 02 | 04/01/2018 | 04/01/2019 |
| | 12:01 A.M. Standard Time at the described premises. | |

**Transaction**

AMENDED DECLARATION Effective: 04/01/2018

| Named Insured and Address | Producer |
|---|---|
| Carteret Surgical Associates, PA<br>3714 Guardian Ave., Ste. E<br>Morehead City, North Carolina 28557 | MAG MUTUAL INSURANCE COMPANY 0002000<br>P.O. BOX 52979<br>ATLANTA, GA 30355-0979<br><br>Telephone: 800-282-4882 |

**Policy Interests Continued . . .**

ADDITIONAL INSURED LOC. 7
First Citizens Bank and Trust Company
c/o Loan Servicing Dept., DAC 20
P.O. Box 26592
Raleigh, North Carolina 27611

ADDITIONAL INSURED LOC. 7
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

ADDITIONAL INSURED LOC. 8
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

ADDITIONAL INSURED LOC. 9
National Supplier Clearinghouse
P.O. Box 100142
Columbia, South Carolina 29202-3142

)SS PAYEE LOC. 1
Wells Fargo Bank, NA
ISAOA, ATIMA
P.O. Box 2705
Winston Salem, North Carolina 27102

LOSS PAYEE LOC. 1
First Citizens Bank and Trust Company
c/o Loan Servicing Dept., DAC 20
P.O. Box 26592
Raleigh, North Carolina 27611

LOSS PAYEE LOC. 3
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

LOSS PAYEE LOC. 6
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

LOSS PAYEE LOC. 6
First Citizens Bank and Trust Company
c/o Loan Servicing Dept., DAC 20
P.O. Box 26592
Raleigh, North Carolina 27611

LOSS PAYEE LOC. 7
First Citizens Bank and Trust Company
c/o Loan Servicing Dept., DAC 20
P.O. Box 26592
Raleigh, North Carolina 27611

Countersigned Date 06/18/18

Authorized Signature

MagMutual Insurance Company
P.O. Box 52979
Atlanta, Ga 30355-0979
404-842-5600 800-282-4882

# BUSINESSOWNERS DECLARATIONS

| Policy Number | Policy Period From | To |
|---|---|---|
| BOP 0006799 02 | 04/01/2018 | 04/01/2019 |
| | 12:01 A.M. Standard Time at the described premises. | |

**Transaction**

AMENDED DECLARATION Effective: 04/01/2018

| Named Insured and Address | Producer |
|---|---|
| Carteret Surgical Associates, PA<br>3714 Guardian Ave., Ste. E<br>Morehead City, North Carolina 28557 | MAG MUTUAL INSURANCE COMPANY 0002000<br>P.O. BOX 52979<br>ATLANTA, GA 30355-0979<br><br>Telephone: 800-282-4882 |

**Policy Interests Continued . . .**

LOSS PAYEE LOC. 8
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

LOSS PAYEE LOC. 9
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

MORTGAGEE, ALL PROPERTY LOC. 1
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

MORTGAGEE, ALL PROPERTY LOC. 3
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

MORTGAGEE, ALL PROPERTY LOC. 6
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

MORTGAGEE, ALL PROPERTY LOC. 7
First Citizens Bank and Trust Company
c/o Loan Servicing Dept., DAC 20
PO BOX 29519
Raleigh, North Carolina 27626

MORTGAGEE, ALL PROPERTY LOC. 8
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

MORTGAGEE, ALL PROPERTY LOC. 9
Bank of North Carolina, its Successors
and/or Assigns ATIMA
PO Box 1148
Thomasville, North Carolina 27361

NAMED INSURED LOC. 1
Carteret Investment Associates, LLC
3714 Guardian Ave., Ste. E
Morehead City, North Carolina 28557

NAMED INSURED LOC. 7
Carteret Investment Associates II, LLC
3714 Guardian Ave., Ste. E
Morehead City, North Carolina 28557

These Declarations together with the coverage form(s) and any endorsement(s) combine to complete the above numbered policy.

Countersigned Date 06/18/18

Authorized Signature

BOPDEC 08/15 Issued Date: 06/18/18

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

| Coverage | Additional Premium |
|---|---|
| **Hired Auto Liability** | $34.00 |
| **Non-Owned Auto Liability** | $44.00 |

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

**1. Hired Auto Liability**
The insurance provided under Paragraph **A.1. Business Liability** in Section **II** – Liability, applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**2. Non-Owned Auto Liability**
The insurance provided under Paragraph **A.1. Business Liability** in Section **II** – Liability, applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

**1.** The exclusions, under the Paragraph **B.1. Applicable To Business Liability Coverages** in **Section II – Liability,** other than Exclusions **a., b., d., f.** and **i.** and the Nuclear Energy Liability Exclusion, are deleted and replaced by the following:

**a.** "Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(a)** Whether the insured may be liable as an employer or in any other capacity; and

**(b)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

**(i)** Liability assumed by the insured under an "insured contract"; or

**(ii)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

**b.** "Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured,


© ISO Properties, Inc., 2001

2. Paragraph **C. Who Is An Insured** in **Section II – Liability,** is replaced by the following:
Each of the following is an insured under this endorsement to the extent set forth below:
   **a.** You;
   **b.** Any other person using a "hired auto" with your permission;
   **c.** For a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business; and
   **d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.
   None of the following is an insured:
   (1) Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;
   (2) Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;
   (3) Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;
   (4) The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;
   (5) Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** The following additional definitions apply:
   **1. "Auto Business"** means the business or occupation of selling, repairing, servicing, storing or parking "autos".
   **2. "Hired Auto"** means any "auto" you lease, hire or borrow. This does not include any "auto" you lease, hire or borrow from any of your "employees" or members of their households, or from any partner or "executive officer" of yours.
   **3. "Non-Owned Auto"** means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner.


© ISO Properties, Inc., 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPOILAGE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE*

| PREMISES NO. | BLDG. NO. | DESCRIPTION OF PERISHABLE STOCK | LIMIT OF INSURANCE | DEDUCTIBLE |
|---|---|---|---|---|
| | | | 50,000 † | |

† Applies to each location unless otherwise shown in the Declarations

| | CAUSES OF LOSS | |
|---|---|---|
| REFRIGERATION MAINTENANCE AGREEMENT | BREAKDOWN OR CONTAMINATION | POWER OUTAGE |
| ☐ | ☒ | ☒ |

**Section I – Property** is extended to insure against direct physical loss of or damage to "perishable stock" indicated in the Schedule, caused by the Covered Cause(s) of Loss, as provided by this endorsement.

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

The following provisions (**A.** through **I.** inclusive) apply to the coverage provided by this endorsement:

**A.** Paragraph **A.1. Covered Property** in **Section I –Property,** is replaced by the following:

**1. Covered Property**

Covered Property means "perishable stock" shown inthe Schedule at the described premises. if the "perishable stock" is:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody orcontrol except as otherwise provided in LossPayment Property Loss Condition **E.6.d.(3)(b).**

**B.** The following is added to Paragraph **A.2. Property Not Covered** in **Section I – Property:**

**g.** Property located:

**(1)** On buildings;

**(2)** In the open; or

**(3)** In vehicles.


© ISO Properties, Inc., 2001

C. Paragraph **A.3. Covered Causes Of Loss** in **Section I – Property** is replaced by the following:

3. **Covered Causes Of Loss**
   Subject to the exclusions described in Item E. of this endorsement, Covered Causes of Loss means the following as indicated in the Schedule:
   a. Breakdown or Contamination, meaning:
      (1) Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment, only while such apparatus or equipment is at the described premises shown in the Schedule; or
      (2) Contamination by a refrigerant, only while the refrigerating apparatus or equipment is at the described premises shown in the Schedule.
      Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.
   b. Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

D. Paragraph **A.6. Coverage Extensions** in Section I – Property does not apply.

E. Paragraph **B. Exclusions** in **Section I – Property** is replaced by the following:

**B. Exclusions**

1. Of the **Exclusions** contained in Paragraph **B.1.** in Section **I** – Property, only the following apply to Spoilage Coverage:
   b. Earth Movement;
   c. Governmental Action;
   d. Nuclear Hazard;
   f. War And Military Action; and
   g. Water.
2. The following **Exclusions** are added:
   We will not pay for loss or damage caused by or resulting from:
   a. The disconnection of any refrigerating, cooling or humidity control system from the source of power.
   b. The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.
   c. The inability of an electrical utility company or other power source to provide sufficient power due to:
      (1) Lack of fuel; or
      (2) Governmental order.
   d. The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.
   e. Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

F. Section **D. Deductibles** in **Section I – Property** is replaced by the following:
We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance. No other deductible in this policy applies to the coverage provided by this endorsement.

G. **Conditions**

1. Under **Property Loss Conditions** in **Section I – Property,** Item **d.** of Condition **6. Loss Payment** is replaced by the following:
   d. We will determine the value of Covered Property as follows:
      (1) For "perishable stock" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;
      (2) For other "perishable stock", at actual cash value.


© ISO Properties, Inc., 2001

2. The following condition applies in addition to the **Property Loss Conditions** (as modified in **1.** above) and **Property General Conditions** in Section **I** – Property and Section **III** – Common Policy Conditions:

**Additional Condition – Refrigeration Maintenance Agreements**

**Refrigeration Maintenance Agreements**

If Breakdown or Contamination is designated as a Covered Cause of Loss and a refrigeration maintenance agreement is shown as applicable in the Schedule, the following condition applies:

You must maintain a refrigeration maintenance or service agreement as described below. If you voluntarily terminate this agreement and do not notify us within 10 days, the insurance provided by this endorsement under the Breakdown or Contamination Covered Cause of Loss will be automatically suspended at the location involved.

A refrigeration maintenance agreement means a written service contract, between you and the refrigeration service organization, which provides for regular periodic inspection of the refrigeration equipment at the insured location, and the servicing and repair of the equipment, including emergency response at the insured location.

**H.** Paragraph **G. Optional Coverages** in Section **I** – Property does not apply.

**I.** The following is added to the **Definitions** in **Section I – Property:**

"Perishable Stock" means property:

**a.** Maintained under controlled temperature or humidity conditions for preservation; and

**b.** Susceptible to loss or damage if the controlled temperature or humidity conditions change.


© ISO Properties, Inc., 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE***

| |
|---|
| **Name Of Person Or Organization:**<br>Any organization required by contract or lease of Medical Equipment. |
| **Description of Leased Equipment:** |
| **Location(s) of Leased Equipment:** |

The following is added to Paragraph **C. Who Is An Insured** in **Section II – Liability:**

4. The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the maintenance, operation or use by you of equipment leased to you by that person or organization and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**A.** Any "occurrence" which takes place after the equipment lease expires; or

**B.** "Bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

* Information required to complete Schedule, if not shown on this endorsement, will be shown in the Declarations.


© ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM - SECTION I - PROPERTY

**SCHEDULE***

| Bldg./Prem. No./No. | Coverage 1 | Coverage 2 Limit Of Insurance | Coverage 3 Limit Of Insurance | Coverage 2 And 3 Combined Limit Of Insurance |
|---|---|---|---|---|
| / | ☒ | $ | $ | $ 100,000 †** |
| / | ☐ | $ | $ | $ ** |
| / | ☐ | $ | $ | $ ** |
| Business Income And Extra Expense Optional Coverage | | | Yes ☐ | No ☒ |
| Number Of Hours *** Waiting Period For Period of Restoration | | hours | | |

*Information required to complete the Schedule, if not shown on this endorsement, will be shown the Declarations.
†Applies to each location unless otherwise shown in the Declarations.

**Do not enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages 2 and 3, or if one of these Coverages is not applicable.

***Applicable to Business Income and Extra Expense Optional Coverage.

**A.** Each Coverage – Coverage **1**, Coverage **2** and Coverage 3 – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for the Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

**1.** The ordinance or law:

**a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premise; and

**b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**2.a.** The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

**b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

**c.** But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

**3.** In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **1, 2** and/or **3** of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage alone would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under terms of Coverages **1, 2** and/or **3** of this endorsement.

**C.** We will not pay under Coverage **1, 2,** or **3** of this endorsement for:

**1.** Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread of any activity of "fungi", wet or dry rot or bacteria; or

**2.** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**D. Coverage**

**1. Coverage 1 – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **1** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building. Coverage **1** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **1** does not increase the Limit of Insurance.

**2. Coverage 2 – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

Paragraph **E.6.d. Loss Payment** Property Loss Condition does not apply to Demolition Cost Coverage.

**3. Coverage 3 – Increased Cost Of Construction Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**a.** Repair or reconstruct damaged portions of that building; and/or

**b.** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

**a.** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**b.** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Paragraph **E.6.d. Loss Payment** Property Loss Condition does not apply to the Increased Cost of Construction Coverage.

**E. Loss Payment**

**1.** All following loss payment provisions **E.2.** through **E.5.,** are subject to the apportionment procedure set forth in Section **B.3.** of this endorsement.

**2.** When there is a loss in value of an undamaged portion of a building to which Coverage **1** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**a.** If the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of:

**(1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

b. If the property is **not** repaired or replaced, we will not pay more than the lesser of:
   (1) The actual cash value of the building at the time of loss; or
   (2) The Limit of Insurance shown in the Declarations as applicable to the covered building.

3. Unless Paragraph **E.5.** applies, loss payment under Coverage 2 – Demolition Cost Coverage will be determined as follows:
We will not pay more than the lesser of the following:
   a. The amount you actually spend to demolish and clear the site of the described premises; or
   b. The applicable Limit Of Insurance shown for Coverage 2 in the Schedule above.

4. Unless Paragraph **E.5.** applies, loss payment under Coverage 3 – Increased Cost of Construction Coverage will be determined as follows:
   a. We will not pay under Coverage **3:**
      (1) Until the property is actually repaired or replaced, at the same or another premises; and
      (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.
   b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage 3 is the lesser of:
      (1) The increased cost of construction at the same premises; or
      (2) The applicable Limit of Insurance shown for Coverage 3 in the Schedule above.
   c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage 3 is the lesser of:
      (1) The increased cost of construction at the new premises; or
      (2) The applicable Limit of Insurance shown for Coverage 3 in the Schedule above.

5. If a **Combined** Limit Of Insurance is shown for Coverages 2 and 3 in the Schedule above, Paragraphs **E.2.** and **E.3.** of this endorsement do not apply with respect to the Building property that is subject to the Combined Limit, and the following loss payment provisions apply instead:
The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit of Insurance shown for Coverages 2 and 3 in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:
   a. For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.
   b. With respect to the Increased Cost of Construction:
      (1) We will not pay for the increased cost of construction:
         (a) Until the property is actually repaired or replaced, at the same or another premises; and
         (b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.
      (2) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.
      (3) If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

F. The terms of this endorsement apply separately to each building to which this endorsement applies.

G. Under this endorsement, we will not pay for loss due to any ordinance or law that:
   1. You were required to comply with before the loss, even if the building was undamaged; and
   2. You failed to comply with.

H. Example of Proportionate Loss Payment for Ordinance or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement)

Assume:

- Wind is a Covered Cause of Loss: Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000

. The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value

. Portion of direct physical damage that is covered (caused by wind): $30,000

. Portion of direct physical damage that is not covered (caused by flood): $70,000

. Loss under Ordinance or Law Coverage 3 of this endorsement: $60,000

Step **1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

Step **2:** Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **3** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

NOTE: The same procedure applies to losses under Coverages **1** and **2** of this endorsement.

**I.** If shown as applicable in the Schedule of this endorsement, the following applies:
**Business Income And Extra Expense Optional Coverage**
1. If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of your "operations" caused by or resulting from the enforcement of any ordinance or law that:
   **a.** Regulates the construction or repair of any property;
   **b.** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and
   **c.** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".
2. Paragraph **F.8. Period Of Restoration** Definition is replaced by the following:
   **8.** "Period of Restoration" means the period of time that:
      **a.** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises, unless a lesser number of hours is shown in the Schedule of the endorsement; and
      **b.** Ends on the earlier of:
         **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
         **(2)** The date when business is resumed at a new permanent location.

      "Period of restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.
      The expiration date of this policy will not cut short the "period of restoration".

**K.** The following definition is added to Paragraph **H.** Property Definitions:
1. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTILITY SERVICES - DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE*

| Water Supply Property | Communication Supply Property (Not Including Overhead Transmission Lines) | Communication Supply Property (Including Overhead Transmission Lines) | Power Supply Property (Not Including Overhead Transmission Lines) | Power Supply Property (Including Overhead Transmission Lines) |
|---|---|---|---|---|
| ☒ | ☐ | ☒ | ☐ | ☒ |

| Prem. No. | Bldg. No. | Covered Property | Utility Services Limit Of Insurance |
|---|---|---|---|
| | | | 25,000 † |

† Applies to each location unless otherwise shown in the Declarations

* Information required to complete Schedule, if not shown on this endorsement, will be shown in the Declarations.

The coverage provided by this endorsement is subject to the provisions of **Section I – Property**, including Paragraph **D.** Deductibles, except as provided below.

**A.** The following is added to Paragraph **A. Coverage:**

We will pay for loss of or damage to Covered Property described in the Schedule, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **B.** of this endorsement if such property is indicated by an "X" in the Schedule and is located outside of a covered building described in the Declarations.

**B. Utility Services**

1. Water Supply Services, meaning the following types of property supplying water to the described premises:
   **a.** Pumping stations; and
   **b.** Water mains.
2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:
   **a.** Communication transmission lines, including optic fiber transmission lines;
   **b.** Coaxial cables; and


© ISO Properties, Inc., 2001

c. Microwave radio relays except satellites.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:
   a. Utility generating plants;
   b. Switching stations;
   c. Substations;
   d. Transformers; and
   e. Transmission lines.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

C. Paragraph **C. Limits Of Insurance** is replaced by the following:

If a Utility Services Limit of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property.

If no Limit of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit of Insurance on the Covered Property as shown in the Declarations. But this Utility Services Endorsement does not increase the applicable Limit of Insurance.


© ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTILITY SERVICES - TIME ELEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE*

| Water Supply Property | Communication Supply Property (Not Including Overhead Transmission Lines) | Communication Supply Property (Including Overhead Transmission Lines) | Power Supply Property (Not Including Overhead Transmission Lines) | Power Supply Property (Including Overhead Transmission Lines) |
|---|---|---|---|---|
| ☒ | ☐ | ☒ | ☐ | ☒ |

| Prem. No. | Bldg. No. | Utility Services Limit Of Insurance |
|---|---|---|
| | | 25,000 † |

† Applies to each location unless otherwise shown in the Declarations

* Information required to complete Schedule, if not shown on this endorsement, will be shown in the Declarations.

The coverage provided by this endorsement is subject to the provisions of **Section I – Property Coverages,** except as provided below.

**A.** The following is added to Paragraph **A. Coverage:**

We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **B.** of this endorsement if such property is indicated by an "X" in the Schedule and is located outside of a covered building described in the Declarations.

**B. Utility Services**

1. Water Supply Services, meaning the following types of property supplying water to the described premises:
   **a.** Pumping stations; and
   **b.** Water mains.
2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:
   **a.** Communication transmission lines, including optic fiber transmission lines;
   **b.** Coaxial cables; and
   **c.** Microwave radio relays except satellites.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.


© ISO Properties, Inc., 2001

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:
   **a.** Utility generating plants;
   **b.** Switching stations;
   **c.** Substations;
   **d.** Transformers; and
   **e.** Transmission lines.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**C.** Paragraph **C. Limits Of Insurance** is replaced by the following:

The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Schedule as applicable to the Covered Property.


© ISO Properties, Inc., 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NORTH CAROLINA WINDSTORM OR HAIL EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section I – Property** is amended as follows:

**A.** The following is added to Paragraph **B.1. Exclusions** and is therefore **not** a Covered Cause of Loss:

**i. Windstorm Or Hail**

We will not pay for loss or damage:

(1) Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

(2) Caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.

But if Windstorm or Hail results in a cause of loss other than rain, snow, sand or dust and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss. For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage attributable to the fire is covered subject to any other applicable policy provisions.

**B.** This endorsement does not apply to Paragraph **A.5.i. Civil Authority** Additional Coverage.

**C.** In Paragraph **H.11. Property Definitions,** windstorm or hail is deleted from the "Specified Causes of Loss".

 © ISO Properties, Inc., 2001 

Case 4:21-cv-00157-FL Document 1-1 Filed 10/21/21 Page 76 of 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each employee | $ | each employee | $ 80.00 |
| | $ 3,000,000 | aggregate | | | |
| Retroactive Date: | 04/01/2016 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** **Section II – Liability** is amended as follows:

1. The following is added to Paragraph **A. Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**a. Insuring Agreement**

**(1)** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(a)** The amount we will pay for damages is limited as described in Paragraph **5.** of this endorsement; and

**(b)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**(2)** This insurance applies to damages only if:

**(a)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(b)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(c)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **7.** of this endorsement.

**(3)** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(a)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

(b) When we make settlement in accordance with Paragraph **a.(1)** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim".

(4) All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**b. Exclusions**

This insurance does not apply to:

**(1) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**(2) Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(3) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insured.

**(4) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(5) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(a) Failure of any investment to perform;

(b) Errors in providing information on past performance of investment vehicles; or

(c) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(6) Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(7) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(8) Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(9) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(10)Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination or other employment-related practices.

**2.** For the purposes of the coverage provided by this endorsement:

**a.** All references to Supplementary Payments are replaced by Supplementary Payments and Employee Benefits Liability.

**b.** Paragraphs **f.(1)(b), f.(2)** and **f.(3) Coverage Extension – Supplementary Payments** do not apply.

**3.** For the purposes of coverage provided by this endorsement, Paragraph **C.2. Who Is An Insured** is replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.


© ISO Properties, Inc., 2001

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

4. For the purposes of the coverage provided by this endorsement, Paragraph **C.3. Who Is An Insured** does not apply.

5. For the purposes of the coverage provided by this endorsement, Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

**a. Limits Of Insurance**

(1) The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

(a) Insureds;

(b) "Claims" made or "suits" brought;

(c) Persons or organizations making "claims" or bringing "suits";

(d) Acts, errors or omissions; or

(e) Benefits included in your "employee benefits program".

(2) The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

(3) Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(a) An act, error or omission; or

(b) A series of related acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**b. Deductible**

(1) Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The Limits of Insurance shall not be reduced by the amount of this deductible.

(2) The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

(3) The terms of this insurance, including those with respect to:

(a) Our right and duty to defend any "suits" seeking those damages; and

(b) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim" apply irrespective of the application of the deductible amount.

(4) We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.


© ISO Properties, Inc., 2001

6. For the purposes of the coverage provided by this endorsement, Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:
   2. **Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**
      a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:
         (1) What the act, error or omission was and when it occurred; and
         (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.
      b. If a "claim" is made or "suit" is brought against any insured, you must:
         (1) Immediately record the specifics of the "claim" or "suit" and the date received; and
         (2) Notify us as soon as practicable.
         You must also see to it that we receive written notice of the "claim" or "suit" as soon as practicable.
      c. You and any other involved insured must:
         (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";
         (2) Authorize us to obtain records and other information;
         (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and
         (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.
      d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.
7. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:
   **EXTENDED REPORTING PERIOD**
   a. You will have the right to purchase an Extended Reporting Period, as described below, if:
      (1) This endorsement is canceled or not renewed; or
      (2) We renew or replace this endorsement with insurance that:
         (a) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or
         (b) Does not apply to an act, error or omission on a claims-made basis.
   b. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.
   c. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.
      You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.
      We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:
      (1) The "employee benefit programs" insured;
      (2) Previous types and amounts of insurance;
      (3) Limits of Insurance available under this endorsement for future payment of damages; and
      (4) Other related factors.
      The additional premium will not exceed 100% of the annual premium for this endorsement.


© ISO Properties, Inc., 2001

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period.

d. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **5.a.(2)** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **5.a.(3).**

**8.** For the purposes of the coverage provided by this endorsement, the following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions:**

**a.** "Administration" means:

(1) Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

(2) Handling records in connection with the "employee benefit program"; or

(3) Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**b.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**c.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**d.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

(1) Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

(2) Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

(3) Unemployment insurance, social security benefits, workers' compensation and disability benefits;

(4) Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

(5) Any other similar benefits designated in the Schedule or added thereto by endorsement.

**9.** For the purposes of the coverage provided by this endorsement, Paragraphs **F.5.** and **F.18. Liability And Medical Expenses Definitions** are replaced by the following:

**5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or



Case 4:21-cv-00157-FL Document 1-1 Filed 10/21/21 Page 81 of 93

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**B. Section III – Common Policy Conditions** is amended as follows:

**1.** For the purposes of the coverage provided by this endorsement, Paragraph **H.2. Other Insurance** is replaced by the following:

**2.** This Employee Benefits Liability insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(1)** No Retroactive Date is shown in the Schedule of this endorsement; or

**(2)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this endorsement.


© ISO Properties, Inc., 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMPUTER FRAUD AND FUNDS TRANSFER FRAUD

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Coverage | Limit Of Insurance |
|---|---|
| Computer Fraud And Funds Transfer Fraud Coverage | $ 15,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section I – Property** is amended as follows:

The following is added to Paragraph **A.5. Additional Coverages:**

**A. Computer Fraud And Funds Transfer Fraud**

**1.** The Computer Fraud And Funds Transfer Fraud Coverage Limit shown in the Schedule of this endorsement is the most we will pay for loss of and damage to "money", "securities" and "other property" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the described premises, bank or savings institution:

**a.** To a person (other than a messenger) outside those premises; or

**b.** To a place outside those premises.

**2.** The Computer Fraud And Funds Transfer Fraud Coverage Limit shown in the Schedule of this endorsement is the most we will pay for loss of "money" and "securities" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" and "securities" from your "transfer account".

**B.** The following exclusion is added to Paragraph **G.2.b. Money And Securities** Optional Coverages:

(4) Or damage to "money" and "securities" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the described premises, bank or savings institution:

**(a)** To a person (other than a messenger) outside those premises; or

**(b)** To a place outside those premises.

**C.** The following are added to Paragraph **H. Property**

**Definitions:**

**15.** "Employee"

**a.** Employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent "employee" as defined in Paragraph **(1)**, who is on leave; or

**(b)** To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the premises;


© ISO Properties, Inc., 2004
06/18/18

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

(4) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan(s)" insured under this policy; and

(b) Your director or trustee while that person is handling "funds" or "other property" of any "employee benefit plan(s)" insured under this policy;

(5) Any natural person who is a former "employee", director, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

(6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the premises.

**b.** "Employee" does not mean:

(1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

**16.** "Fraudulent instruction" means:

**a.** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**b.** A written instruction (other than those described in Paragraph **A.5.k.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an employee but which was in fact fraudulently transmitted by someone else without your or the employee's knowledge or consent.

**17.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property excluded under this policy.

**18.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities":

**a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in Paragraph **A.5.k.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.


© ISO Properties, Inc., 2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL COVERAGE - ERISA EMPLOYEE DISHONESTY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Schedule*

Name of Plan (s):

* Information required to complete Schedule, if not shown on this endorsement, will be shown in the Declarations.

1. Each of the Plans named in the Schedule is added as an Additional Insured for coverage provided by **SECTION I – Property - G. Optional Coverages- 3. Employee Dishonesty,** but only for loss sustained by any Employee Welfare or Pension Benefit Plan (hereinafter called Plan) subject to the Employment Retirement Income Security Act (ERISA).

2. The following apply to insurance provided by this endorsement:
   a. Under paragraph **a.** of **3. Employee Dishonesty**, the words "(except you or your partner)" are hereby deleted.
   b. Your employees include any natural person who is:
      1) A trustee, an officer, employee, administrator or a manager, except an administrator or manager who is an independent contractor of any Plan, and
      2) Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.
   c. **D. Deductible** of **SECTION I – PROPERTY** does not apply to ERISA Employee Dishonesty Coverage.

3. In compliance with certain provision of ERISA:
   a. If you have more than one Plan subject to ERISA, you or the Plan Administrator must select Limit of Insurance for Employee Dishonesty that is sufficient to provide an amount of insurance for a loss sustained by each Plan that is at least equal to that required for each separate Plan.
   b. Any payment we make to you for loss sustained by any Plan subject to ERISA will be held by you for the use and benefit of the Plan(s) sustaining the loss.
   c. If you have two or more Plans subject to ERISA, any payment we make for loss:
      1) Sustained by two or more Plans; or
      2) Of commingled funds or other property of two or more Plans,

      that arise out of any one occurrence is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required to be provided for loss under each Plan bears to the total of these amounts.


Includes copyrighted material of ISO Properties, Inc., 2001 used with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FINE ARTS COVERAGE - ADDITIONAL COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Information required below may be shown on BP MM 08S a supplemental Schedule or Declarations.

| Covered Property Description | Limit of Insurance |
|---|---|
| 1. Unscheduled Fine Arts | $50,000 |
| 2. Scheduled Fine Arts | See additional coverage schedule BP MM 08S if applicable. |

**Deductible: $**

The following is added to **SECTION I - PROPERTY A.COVERAGE:**

**Fine Arts**

**1.** We will pay for direct physical loss to Covered Property caused by or resulting from a Covered Cause of Loss as described in this Additional Coverage.

Under this Additional Coverage, Covered Property means only those "fine arts" described in the Schedule for which a Limit of Insurance is shown, while in the coverage territory and while in transit between points in the coverage territory.

**2.** The following exclusions apply to this Additional Coverage:

**a.** We will not pay for loss by or resulting from dampness or dryness of atmosphere, or changes in extremes of temperature;

**b.** We will not pay for loss caused by or resulting from wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration, insects, birds, rodents or other animals;

**c.** We will not pay for loss caused by or resulting from any repairing, restoration or re-touching process;

**d.** We will not pay for loss or damage caused by unauthorized instructions to transfer property to any person or to any place;

**e.** We will not pay for breakage of art glass, windows, statuary, glassware, bric-a-brac, marble, porcelain and similar fragile property. But we will pay for loss caused by fire, lightning explosion, windstorm, earthquake, flood, vandalism, aircraft, theft or attempted theft, collision, derailment or overturn of any conveyance.

**f.** Under **SECTION I.B. Exclusions**
1.c Government Action;
1.d. Nuclear Hazard;
1.f. War and Military Action;
2.f. Dishonesty
2.g. False Pretense; and
2.k. Neglect.


Includes copyrighted material of ISO Properties, Inc., 2001. used with its permission.

But if an excluded cause of loss that is listed in paragraphs **b.** and **c.** above results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

No other exclusions in **SECTION I.B. Exclusions** apply to this Additional Coverage.

3. With respect to this Additional Coverage, **SECTION I-PROPERTY D. Deductibles** is replaced by:

   We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule above. We will pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

4. **Additional Conditions**

   With respect to "fine arts" covered by this Additional Coverage, the following changes are made to **SECTION E – Property Loss Conditions:**

   **a. Valuation**

   Paragraph **6.a.** of **Loss Payment** is replaced by the following:

   **a.** The value of each item of "fine arts" shown in the Schedule will be the least of the following amounts:

   **(1)** The market value of the property at the time and place of loss;
   **(2)** The cost of reasonably repairing or restoring the property; or
   **(3)** The cost of replacing the property with substantially the same property.

   **b. Pairs, Sets or Parts**

   The following is added to **PROPERTY LOSS CONDITIONS:**

   In the event of loss or damage to any part of a pair or set, we may:

   **(1)** Repair or replace any part to restore the pair or set to its value before the loss or damage; or
   **(2)** Pay the difference between the value of the pair or set before and after the loss or damage.

   In the event of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay the value of the lost or damaged part.

   **c. Packing and Unpacking**

   The following is added to **PROPERTY LOSS CONDITIONS:**

   You agree that Covered Property will be packed and unpacked by competent professional packers.

5. **Additional Definition**

   The following definition applies to this Additional Coverage:

   "Fine Arts" means property that is rare or has historic or artistic value, such as paintings, etchings, drawings, pictures, prints, rare books, rugs, tapestries, antique furniture, art glass, stained glass, murals, decoratively painted walls and other bona fide works of art or rarity.


Includes copyrighted material of ISO Properties, Inc., 2001, used with its permission.

MH™
MT. HAWLEY INSURANCE COMPANY

**CLAIM DEPARTMENT:** P.O. BOX 3961 • PEORIA, IL 61612-3961
**UPS/FEDEX:** 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P 800-444-0406
F 866-692-6796
RLICORP.COM

May 26, 2020

**Via Certified Mail #9214 8969 0099 9790 1633 7470 55 Return Receipt Requested and Email** rh@lrgclaims.com
Randall Harris
215 Tyler Drive
Orange, TX 77630

| | | |
|---|---|---|
| Re: | Insured: | Carteret Investment Associates, PA |
| | Insurer: | Mt. Hawley Insurance Company |
| | Policy No: | MWH0080435 – Effective Dates of April 1, 2018 – April 1, 2019 |
| | Claim: | 00459602 |
| | Date/Loss: | September 13, 2018 |
| | Place/Loss: | Various Premises, Morehead City, NC 28557 |

Dear Mr. Harris:

As we understand the facts to date, Carteret Investment Associates, PA contends loss and/or damages as a result of Hurricane Florence to multiple buildings. To assist us in our investigation, we requested the assistance of Steven Phillips, Independent Adjuster with Engle Martin and Associates, and Craig Hanes with Madsen, Kneppers and Associates.

Though wind and resulting water damages were identified at Location Numbers Five (3700 Symi Circle) and Seven (2145 Country Club Rd), a combination of damage causes was identified at Location Number One (3714 Guardian Ave). The wind damage and resulting covered water intrusion at Location Number One are not estimated to exceed that location's corresponding deductible. MKA has advised us that no more than 10-12% of the interior water damages at Location Number One resulted from windstorm damage to its roof or walls through which the water entered.

Based on the information you have provided in connection with your claim and a review of your policy, we provide you with the following determination. Certain policy provisions are set forth in this letter but please refer to your policy for the full text.

Please reference policy form WHPR 101 (12/16), which states the following:

**WINDSTORM OR HAIL POLICY**

1. **AGREEMENT**
   We will pay for direct physical loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss.

EXHIBIT
3

MT. HAWLEY
INSURANCE COMPANY

2. **COVERED PROPERTY**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations, from the peril(s) of windstorm and/or hail.

* * *

4. **COVERED CAUSE OF LOSS**
Covered Cause of Loss, for purposes of this policy, means physical loss of or damage to Covered Property at the premises described in the Declarations, for the peril windstorm or hail.

Covered Cause of Loss does not mean:

* * *

**C.** Loss or damage to the interior of any building caused by rain, snow, sand, dust, or water whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand, dust, or water enters;

10. **GENERAL CONDITIONS**

**I.** **Legal Action Against Us**
No one may bring a legal action against us under this policy unless:
**1.** There has been full compliance with all the terms of this policy; and
**2.** The action is brought within 2 years after you first have knowledge of the direct loss or damage.

* * * * *

Engle Martin has prepared the enclosed Statement of Loss values, deductible, and estimated loss/damage. As detailed therein, our claim adjustment totals $209,155.94 ($278,347.75 building damages + $36,491.72 business income loss - $105,683.53 deductible application). After applying the $200,000 advance payment, the net remaining replacement cost claim totals $9,155.94. This payment has been sent to you via separate correspondence.

You may recall that MKA has advised us that no more than 10-12% of the interior water damages at location number one resulted from windstorm damage to its roof or walls through which the water entered. The remaining interior water damage to Location Number One was not caused by

MT. HAWLEY
INSURANCE COMPANY

wind damage to the roof or walls of the building. MKA's analysis report has been provided to you previously.

In its ongoing effort to resolve this claim, Mr. Stephen Phillips attempted to reach a compromise settlement. Mr. Phillips has stated that you have not returned any recent correspondence in an attempt to reach a resolution.

Based on the foregoing, we must regretfully inform you that we are unable to fully provide coverage under the above-referenced policy for your claim. If there is additional information that you believe Mt. Hawley and should consider in our coverage analysis, please either contact the undersigned or forward it to our attention.

Please be advised that we are not waiving our rights to assert any and all other rights or defenses under the policy or applicable law. This partial declination is made without prejudice to any defenses or rights that that Mt. Hawley may have and without waiver of any of the terms, conditions, or provisions of this policy of insurance.

This partial declination is based on the facts as presently determined after our investigation. If any additional facts should become known, which may affect coverage, Mt. Hawley reserves its right to reevaluate our position.

If you have any questions or concerns, please feel free to contact my office at the phone number or email address listed.

Sincerely,

Matt Campen, CPCU, ASLI, AIC, AINS
matthew.campen@rlicorp.com
Phone: 312-675-4154

Enclosure – Engle Martin Statement of Loss

cc: Risk Placement Services, Inc.
Georgia 400 Center
2400 Lakeview Dr, Suite 675
Alpharetta, GA 30009

ENGLE MARTIN & ASSOCIATES
Adjusters & Claims Administrators



## STATEMENT OF LOSS

| | |
|---|---|
| **Insured:** | **Carteret Investment Associates, PA** |
| Loss Location: | Various Premises; Morehead City, NC 28557 |
| Nature of Loss: | Hurricane Florence – CAT 1852 |
| Date of Loss: | Thursday, September 13, 2018 |
| Policy Number: | MWH0080435 |
| Our File Number: | 1000244955 |
| **Claim Number:** | **00459602** |

| | | VALUE | LOSS | CLAIM |
|---|---|---|---|---|
| **VALUE AS DETERMINED** | | | | |
| **Buildings per MKA** | | **$ 10,972,041.03** | | |
| **Business Personal Property** ***(Limits of Insurance)*** | | **$ 924,375.00** | | |
| **Business Income** ***(Limits of Insurance)*** | | **$ 700,000.00** | | |
| | | | | |
| **LOSS AS DETERMINED** | | | | |
| **Buildings** | | | | |
| MKA Invoice Analysis, Premises 01; *(12% Participation)* | $ 42,813.24 | | | |
| MKA Invoice Analysis, Premises 05 | $ 32,526.76 | | | |
| MKA Invoice Analysis, Premises 07 | $ 139,588.75 | | | |
| Coastal Roofing Quote, Premises 05 | $ 22,019.00 | | | |
| (Invoice #3669 of $39,412 including upgrades noted) | | | | |
| Coastal Roofing Quote, Premises 07 | $ 41,400.00 | | | |
| (Invoice #3484 of $69,414 including upgrades noted) | | | | |
| **Total - Buildings** | **$ 278,347.75** | | **$ 278,347.75** | **$ 278,347.75** |
| | | | | |
| **Business Personal Property** | | | | |
| No Contents Damages Claimed Per Insured | $ - | | | |
| **Total - Business Personal Property** | **$ -** | | **$ -** | **$ -** |
| | | | | |
| **Business Income** | | | | |
| M&M Loss Analysis, Premises 01 *(12% Participation)* | $ 6,594.72 | | | |
| M&M Loss Analysis, Premises 05 | $ - | | | |
| M&M Loss Analysis, Premises 07 | $ 29,897.00 | | | |
| **Total - Business Income** | **$ 36,491.72** | | **$ 36,491.72** | **$ 36,491.72** |
| | | | | |
| **Less** | | | | |
| Depreciation, Premises 01 *(Repairs Complete)* | $ - | | | |
| Depreciation, Premises 05 *(Repairs Complete)* | $ - | | | |
| Depreciation, Premises 07 *(Repairs Complete)* | $ - | | | |
| Deductible Portion Eroded, Premises 01 | $ (49,407.96) | | | |
| *(Full Deductible per Schedule is $182,005.08)* | | | | |
| Deductible, Premises 05 | $ (14,485.62) | | | |
| Deductible, Premises 07 | $ (41,789.95) | | | |
| **Subtotal** | **$ (105,683.53)** | | | **$ (105,683.53)** |
| | | | | |
| **VALUE, LOSS, & CLAIM** | | **$ 12,596,416.03** | **$ 314,839.47** | **$ 209,155.94** |

*Notes:*

*ACV = Actual Cash Value*
*RCV = Replacement Cost Value*
*Depreciation is otherwise recoverable, subject to all policy terms and conditions*
*The deductibles shown are placeholders, as Total Insurable Values have not yet been calculated*

*The above is subject to all policy terms and conditions etc. per the insurer's review and consideration.*

Prepared By:
Steven M. Phillips
Executive General Adjuster
Engle Martin & Associates

March 31, 2020

## CALCULATED VALUES AND DEDUCTIBLE SCHEDULE

**Insured:** **Carteret Investment Associates, PA**
Loss Location: Various Premises; Morehead City, NC 28557
Nature of Loss: Hurricane Florence – CAT 1852
Date of Loss: Thursday, September 13, 2018
Policy Number: MWH0080435
Our File Number: 1000244955
**Claim Number:** **00459602**

| Premises Number | Building Number | Building Value Per MKA | Business Income Value Per M&M | Business Income Limit of Insurance | Business Personal Property Limit of Insurance | Total *(3)* | Deductible *(1)* | Placeholder Deductible *(2)* | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | 001 | $ 7,488,392.94 | $ 774,714.00 | $ 300,000.00 | $ 837,147.00 | $ 9,100,253.94 | 2% | $ (182,005.08) | 3714 Guardian Ave |
| 00002 | 001 | $ 556,149.69 | TBD | $ 100,000.00 | $ 43,000.00 | $ 699,149.69 | 2% | $ (13,982.99) | 221 Professional Circle |
| 00005 | 001 | $ 628,453.17 | $ 51,600.00 | $ 100,000.00 | $ 44,228.00 | $ 724,281.17 | 2% | $ (14,485.62) | 3700 Symi Circle |
| 00007 | 001 | $ 1,928,857.27 | $ 160,640.00 | $ 100,000.00 | n/a | $ 2,089,497.27 | 2% | $ (41,789.95) | 306 Medical Park Ct |
| 00008 | 001 | $ 370,187.96 | TBD | $ 100,000.00 | n/a | $ 470,187.96 | 2% | $ (9,403.76) | 3726 Guardian Ave |
| | | $ 10,972,041.03 | $ 986,954.00 | $ 700,000.00 | $ 924,375.00 | $ 13,083,370.03 | | $ (261,667.40) | |

Notes:

*1. The deductible is 2.00% of the Total Insurable Values Per Location (including time element if applicable) at the time of loss or damage subject to a minimum of $50,000 Per Occurrence for Named Storm*

*2. The deductibles shown are placeholders, as Total Insurable Values have not yet been calculated or remain under review*

*3. Currently, certain business income and personal property limits of insurance are being considered in the placeholder deductible calculations*

Prepared By:
Steven M. Phillips
Executive General Adjuster
Engle Martin & Associates

March 31, 2020

**STATE OF NORTH CAROLINA**

CARTERET County

File No. 21 CVS 907

Judgment Abstract No.

Judgment Docket Book And Page No.

TOTAL RECEIPT AMOUNT $ 200.00

**CIVIL RECEIPTING FORM**

Payer Name: (Party to case) Carteret Investments Assoc.
Last Name / First Name / Middle Name

Payee Name: (Paid by whom, e.g., name of attorney, interested party, etc.) Harvell + Collins (π atty)
Last Name / First Name / Middle Name

| Flag for VCAP = YES | | Flag for VCAP = NO | |
|---|---|---|---|
| **FILING FEES:** | | **FILING FEES:** | |
| ☒ (CVSC) Superior | $ 200.00 | ☐ (CDDC) Divorce/DV Center Fund ($150 filing fee + $75 DV Center Fund) | $ 225.00 |
| ☐ (CVDC) District | $ 150.00 | ☐ (CDDC) with former name resumption (+$10.00 to 21400) | $ 235.00 |
| ☐ (CVMC) Small Claim | $ 96.00 | ☐ (CVDC) Divorce from Bed & Board | $ 150.00 |
| ☐ (CVAC) Appeal - Magistrate (Mag) to DC | $ 146.00 | ☐ Registrations 'R' (21400) | $ |
| ☐ (CVBC) Business Court | $ 1,300.00 | ☐ Other | $ |
| (Account Code If City Facility ____) | | ☐ MISC FILING FEE (21435) | $ |
| Transfer of jurisdiction from one court to another within the same county | | | |
| ☐ From Mag to DC (21220-$50.00, 22220-$4.00) | $ 54.00 | | |
| ☐ From DC to SC (21120) | $ 50.00 | | |
| ☐ MISC FILING FEE (21435) | $ | | |
| **SERVICE FEES:** | | **SERVICE FEES:** | |
| ☐ WRIT OF EXECUTION (21430) | $ | ☐ WRIT OF POSSESSION (21400) *(when a writ of possession is on a non-monetary judgment or old book and page is in existence)* | |
| ☐ WRIT OF POSSESSION (21430) | $ | ☐ SHERIFF (22515) | $ |
| ☐ SHERIFF (22515) | $ | ☐ Other Agency Service Acct. ____ | $ |
| ☐ Other Agency Service Acct. ____ | $ | ALIAS & PLURIES SUMMONS and/or ENDORSEMENTS | |
| ALIAS & PLURIES SUMMONS and/or ENDORSEMENTS | | ☐ 21455 | $ 15.00 |
| ☐ 21455 | $ 15.00 | | |
| **MISCELLANEOUS FEES:** | | **MISCELLANEOUS FEES:** | |
| ☐ ARBITRATION APPEAL (24310) | $ 100.00 | ☐ ARBITRATION FEES (24311) *(Only if CVD)* | $ |
| ☐ CIVIL MOTIONS (21450) | $ 20.00 | ☐ CIVIL MOTIONS (21450) | $ 20.00 |
| ☐ CONFESS JUDGMENT (21400) | $ 25.00 | ☐ CONFESS JUDGMENT (21400) | $ 25.00 |
| ☐ COPY (21410) | $ | ☐ COPY (21410) | $ |
| ☐ (OSA) OUT OF STATE ATTY. | $ 225.00 | ☐ SUPPLEMENTAL PRO. (21400) | $ 30.00 |
| ☐ SUPPLEMENTAL PRO. (21400) | $ 30.00 | ☐ OTHER (ACCT # ____) | $ |
| ☐ TRANSCRIPTS (21440) | $ 10.00 | ☐ REFUND/OVERPAYMENT (29100) | $ |
| ☐ OTHER (ACCT # ____) | $ | **JUDGMENT PAYMENT: (Old Docketed)** | |
| ☐ REFUND/OVERPAYMENT (29100) | $ | ☐ Full (26110) | $ |
| **JUDGMENT PAYMENT: (Abstracted) (CV OR M)** | | ☐ Partial Book ____ Page ____ | |
| ☐ Full (26115) | $ | **DEPOSITS:** | |
| ☐ Partial (26115) | $ | ☐ RENT BONDS (26220) | $ |
| ☐ From Sheriff - No Execution Sale (26120) | $ | ☐ CIVIL SURPLUS FUNDS (26600) | $ |
| **DEPOSITS:** | | ☐ CIVIL TRUST RECEIPT (26310) | $ |
| ☐ RENT BONDS (26220) | $ | ☐ CIVIL BONDS (26210) | $ |
| **APPROVAL:** | | ☐ CLAIM OF LIEN BOND (26600) | $ |
| REVIEWED BY: KBM | | ☐ CONDEMNATIONS (26130) | $ |
| DATE: 9/13/21 | | ☐ DISPUTED FUNDS (26600) | $ |
| | | ☐ INTERPLEADER (26600) | $ |

AOC-FS-3900, Rev. 7/21

© 2021 Administrative Office of the Courts