IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-157-FL

| | | |
|---|---|---|
| CARTERET INVESTMENT ASSOCIATES, LLC and CARTERET SURGICAL ASSOCIATES, P.A., | ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| MT. HAWLEY INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

This matter is before the court upon a plethora of motions. The court addresses here defendant's motion for summary judgment (DE 44); plaintiffs' motion to strike (DE 63); defendant's opposition to notice of filing (DE 75); plaintiffs' motion for oral argument (DE 76); and defendant's motion for leave to file a reply in support of opposition to notice of filing (DE 78).

**STATEMENT OF THE CASE**

Plaintiffs began this insurance contract and tort suit by filing a complaint in Carteret County superior court on September 13, 2021. Defendant removed the action to this court October 21, 2021. Plaintiffs assert claims for breach of contract, common law bad faith, and unfair and deceptive trade practices ("UDTP") in violation of N.C. Gen. Stat. §§ 58-63-15 and 75-1.1. (Compl. (DE 1-1) ¶¶ 37–54).[1] Plaintiffs seek damages, fees, and costs.

---

[1] Plaintiffs originally named an additional insurer in its complaint, but voluntarily dismissed that party November 18, 2021.

Defendant filed the instant summary judgment motion April 19, 2023, relying upon 1) the insurance policy at issue; 2) correspondence between the parties; 3) several documents pertaining to the insurance policy; 4) plaintiffs' expert disclosures; and 5) various third parties' and proposed experts' depositions. In opposition, plaintiffs rely upon the depositions and affidavits of various proposed experts and third parties, and numerous documents relating to the insurance policy.

On May 23, 2023, plaintiffs filed the instant motion to strike certain statements included in defendant's statement of material facts and exhibits, and requested that the court disregard those statements in its summary judgment ruling.

Plaintiffs filed a purported supplement to one of their exhibits August 21, 2023. Defendant responded with an "opposition to notice of filing," which the court construes as a motion to strike. (See Opp'n Notice of Filing (DE 75) ("the Court should disregard the [supplement] in connection with [defendant's] motion for summary judgment")). The parties filed briefs on the "opposition," and defendant has moved for leave to file a reply in support thereof. Finally, plaintiffs have requested oral argument on the summary judgment motion.

## STATEMENT OF FACTS

Plaintiff Carteret Investment Associates, LLC ("CIA") is a limited liability company that owns several medical office buildings in Morehead City, North Carolina (the "buildings"), located at: 1) 3714 Guardian Avenue; 2) 306 Medical Park Court; 3) 3700 Symi Circle; 4) 3726 Guardian Avenue; and 5) 221 Professional Circle. (Compl. ¶¶ 1, 8–10). Plaintiff Carteret Surgical Associates, P.A. ("CSA") operates a surgical practice throughout eastern North Carolina, including in the subject buildings. (Id. ¶ 12). Defendant insured the buildings under a policy covering wind and hail damage (the "policy"). (Id. ¶ 18). The policy covers water damage only if water enters a

building through structural damage caused by wind or hail.  (Undisputed Facts Supp. Mot. Sum. J. (DE 46) ("Def's SMF") ¶ 13).

In September, 2018, Hurricane Florence made landfall in North Carolina.  (Id. ¶ 2). Hurricane Florence inflicted significant water damage on the buildings, (Compl. ¶ 21), and the parties' central dispute is whether the policy covered these damages.  (See id. ¶ 22; Def's SMF ¶¶ 4–13).

Plaintiffs notified defendant of a claim for damage to the buildings shortly after the hurricane.  (Def's SMF ¶ 3).  In September, 2018, an independent insurance adjuster inspected the buildings on defendant's behalf, (id. ¶ 4), and an engineering firm inspected each building except one for defendant.  (Id. ¶ 5).  Plaintiffs submitted a proof-of-loss form for $200,000 in damage on October 26, 2018.  (See App. Statement of Facts (DE 62) ("Pls' App. SMF") Ex. 4 (DE 62-4) 4). After these and other investigative steps, defendant paid plaintiffs $200,000 as an advance, although defendant's investigation had not yet concluded.  (Def's SMF ¶ 9).

While awaiting defendant's final coverage decision, plaintiffs made $1.3 million worth of repairs to the buildings, out-of-pocket.  (Compl. ¶ 32).

Then, on May 26, 2020, defendant notified plaintiffs that defendant had determined plaintiffs' covered damages (the "May Letter").  Defendant claimed its engineering firm had found that wind caused only 10-12% of the water damage at one building.  (Id. ¶ 8).  Taking this figure, the advance payment, and the policy's deductible into account, defendant's covered damage calculation produced a net payment of $9,155.94.  (Id. ¶ 10).

The parties continued to discuss payments and defendant's investigation from 2018 to 2021.  After plaintiffs filed this action in 2021, defendant issued additional payments totaling

$241,063.02 on January 19, 2022, which defendant communicated in a December 30, 2021 letter (the "December Letter"). (Def's SMF ¶ 11).

## COURT'S DISCUSSION

A.    Ancillary Motions (DE 75, 78)

As a threshold matter the court has determined, in the exercise of its discretion, that oral argument is not necessary. Plaintiffs' motion for oral argument (DE 76) therefore is DENIED. Similarly, because the court concludes that defendants' opposition to notice of filing, construed as a motion to strike (DE 75), should be granted for the reasons discussed below based on the existing record, no reply brief in support of the motion is necessary. Defendants' motion for leave to file a reply brief in support of the motion to strike (DE 78) is therefore DENIED. The court turns below to the meat of the matter before it.

B.    Motions for Summary Judgment and to Strike (DE 44, 63, 75)

1.    Standard of Review

The court sets forth here guiding standards for address of a summary judgment motion. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over

4

facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2.      Analysis

     a.      CSA's Status

Defendant argues that CSA is not an insured under the policy, and therefore an improper plaintiff in this case. The court agrees.

Under North Carolina law, a breach of contract claim requires 1) the existence of a valid contract and 2) breach of the terms of the contract. Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). A UDTP claim requires 1) an unfair or deceptive act or practice, 2) in or affecting commerce, and 3) which proximately caused injury to plaintiff. Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72 (2007).

The policy in this case insures only CIA. (See App. Statement of Facts (DE 48) ("Def's App. SMF") Ex. A-1 (DE 48-2) ("Insurance Policy") 1).[2] Plaintiffs do not dispute this fact, (see Pl's Resp. Statement of Material Facts (DE 61) ("Pls' SMF") ¶ 12), and have introduced no evidence that any alleged UDTP or common law bad faith injured CSA. In addition, plaintiffs produce no evidence that could support CSA's right to sue for breach of contract as a third party. See Raritan River Steel Co. v. Cherry, Bekaert, & Holland, 329 N.C. 646, 651–53 (1991). Because CSA is therefore not a party to the relevant contract, and because plaintiffs have produced no evidence of injury to CSA, defendant is entitled to summary judgment against all claims brought by CSA.[3]

---

[2]      Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[3]      Although the court concludes that all claims brought by CSA should be dismissed, the court will continue to refer to "plaintiffs" in the plural throughout this order for the sake of consistency.

b.    Plaintiffs' Motion to Strike (DE 63)

Throughout its summary judgment briefing and exhibits, Defendant relies upon an assertion that only 10-12% of the water damage here occurred because of wind. Plaintiffs contend that this assertion should be stricken as inadmissible hearsay. Defendant's statement of material facts and exhibits repeat this figure in numerous places, and defendant's briefing relies heavily upon it. The court agrees with plaintiffs' argument, and grants the motion to strike.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay evidence is generally inadmissible unless an exception applies, Fed. R. Evid. 802, and hearsay that will be inadmissible at trial cannot be considered at summary judgment. E.g., Giles v. Nat'l R.R. Passenger Corp., 59 F.4th 696, 704 (4th Cir. 2023); Md. Highways Contractors Ass'n, Inc. v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991). Finally, hearsay within hearsay is inadmissible unless each level of statement meets an exception's requirements. Fed. R. Evid. 805.

Several of defendant's exhibits contain the assertion that Madsen, Kneppers & Associates, Inc. ("MKA"), defendant's engineering firm, advised defendant that only 10-12% of the water damage to one of the buildings occurred because of wind damage to the building's roof. (See Def's App. SMF Ex. A-3 (DE 48-4) 9; id. Ex. A-9 (DE 48-10) 7; id. Ex. A-10 (DE 48-11) ("Dec. Letter") 2). These statements were not made in court or through affidavit or similar means, and defendant depends on the truth of this statement to support one of its breach of contract arguments. (See Mem. Supp. Mot. Summ. J. (DE 45) ("Def's Br. Supp.") 7). Defendant largely does not engage with plaintiffs' hearsay arguments in its opposition brief, other than to contend that its independent adjuster made the 10-12% statement, and so testified at his deposition. However, the relevant deposition shows merely that the adjuster adopted these figures from some uncertain

combination of MKA employees. (See Resp. Mot. First Mot. Strike (DE 69) Ex. A (DE 69-1) 10–12)). These statements do not come from any affidavit or deposition, are presented for their truth, and are therefore hearsay.

The court further concludes that no hearsay exception applies to these statements. To be admissible, both the documents containing the statements, and the statements themselves, must qualify for at least one hearsay exemption or exception. Fed. R. Evid. 805. Plaintiffs assume in their briefing that each document that references the 10-12% statement is itself a business record, and therefore admissible under Fed. R. Evid. 803(6). (See Pls' Mem. Law Supp. Mot. Strike Aff., Statement of Material Facts, Exhibits, References Thereto (DE 64) ("Br. Supp. Strike") 5).

However, any information provided by an outsider to the business preparing the record must itself fall within a hearsay exception. See Fed. R. Evid. 805; Andrew v. United States, 91 F. Supp. 3d 739, 749 (M.D.N.C. 2015). The relevant documents were prepared and maintained by defendant or defendant's adjuster, but assert that the 10-12% figure comes from MKA, a separate entity. (See Def's App. SMF Ex. A-3 at 9; id. Ex. A-9 at 7; Dec. Letter 2). The record contains no evidence from any MKA employee addressing this figure, as required under Rule 803(6), except for the deposition of the MKA engineer who wrote the summary report submitted to defendant. This engineer denies making the statement and professes uncertainty about its origin. (See Pls' App. SMF Ex. 9 (DE 62-9) ("Rader Dep.") 143:21–146:11). The statement therefore cannot qualify as a business record under Rule 803(6). Further, the court concludes that no other hearsay exemption or exception applies.

The statements across defendant's exhibits, asserting that MKA advised defendant that wind produced only 10-12% of the water damage at issue, are inadmissible hearsay. The court

therefore grants plaintiffs' motion to strike. The court will not consider these statements for their truth at summary judgment.

c.     Defendant's Motion to Strike (DE 75)

As part of their summary judgment materials, plaintiffs filed an affidavit from David Dees, whom plaintiffs timely designated as an expert on the reasonableness of the repair costs plaintiffs incurred. (See Pls' App. SMF Ex. 1 (DE 62-1) ("Dees Affidavit"); Def's App. SMF Ex. C (DE 48-15) ("Pls' Expert Disclosures")).[4] After the close of briefing on defendant's summary judgment motion, plaintiffs filed an updated affidavit with additional material. (See Notice of Filing (DE 73) ("Updated Dees Affidavit") 5). Defendant then filed an "opposition to notice of filing" to this updated affidavit, which the court construes as a motion to strike the newly added material. (See generally Opp'n Notice of Filing).

The parties spill much ink on this de facto motion to strike, but the issues involved are simple. The case management order in this action, as amended, required plaintiffs to serve their expert reports by May 6, 2022. (See Am. Order Am. Pre-Trial Deadlines (DE 27)). Expert designations and reports must contain a complete statement of all opinions to be expressed and the basis and reasons therefor. Fed. R. Civ. P. 26(a)(2). Plaintiffs designated two experts, both retained solely to opine on the reasonableness of plaintiffs' repair costs. (See generally Pls' Expert Disclosures). Dees's original affidavit and report confine themselves entirely to this issue. (See Dees Aff. 1–2; Opp'n Notice of Filing Ex. 2 (DE 75-2) ("Dees Report") 1).

Despite the narrowly circumscribed scope of Dees's opinions in his designation, report, and original affidavit, Plaintiffs seek to update his affidavit with additional material about the

---

[4]     Although plaintiffs' amended expert disclosures were filed after the pertinent deadline, the record does not reflect when plaintiffs made their original expert disclosures, and defendant does not make any argument on timeliness.

causes of damage to the buildings.  (See Updated Dees Aff. ¶¶ 15–18).  But the deadline to designate expert witnesses and serve expert reports passed over a year ago.  See Fed. R. Civ. P. 26(a)(2)(B)(i); (Am. Order Am. Pre-Trial Deadlines 1–2).  In addition, Rule 26(e) requires a party to "supplement or correct its disclosure . . . in a timely manner if the party learns that in some materials respect the disclosure or response is incomplete or incorrect," which "duty to supplement extends both to information included in the report and to the information given during the expert's deposition."  Fed. R. Civ. P. 26(e)(1)-(2).

"Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the party learns of new information."  S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595–96 (4th Cir. 2003).  "But this duty does not permit a party to make an end-run around the normal timetable for conducting discovery."  Colony Apartments v. Abacus Project Mgmt., Inc., 197 F. App'x 217, 223 (4th Cir. 2006).  Accordingly, "[c]ourts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report."  Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008).

The additional material in Dees's affidavit is not a mere attempt to correct a mistake or inadvertent omission from his report.  Plaintiffs designated Dees solely to "provide opinions as to the reasonable costs to repair/remediate defects at the properties."  (Pls' Expert Disclosures 2). Dees's short report did exactly that, and no more.  (See Dees Report 1).  Further, Dees testified clearly at his deposition that he had not been retained to opine on causation, and had no opinions on that issue.  (See Opp'n Notice of Filing Ex. C (DE 75-3) 57:24–58:6).  However, Dees's updated report offers opinions on unrelated causation issues far beyond the scope of his designation.  The

updated affidavit is therefore not a mere correction, but an attempted untimely expansion of the scope of Dees's designation.

The court must therefore exclude the new portions of Dees's updated affidavit unless the new opinions are harmless, or plaintiffs offer "substantial justification" for failing to offer them on time. Fed. R. Civ. P. 37(c)(1); see S. States Rack & Fixture, Inc., 318 F.3d at 596; see also, e.g., Poulis-Minot v. Smith, 388 F.3d 354, 357–59 (1st Cir. 2004) (affirming striking of opinions that exceeded scope of designation). Given the importance of causation to this case, the introduction of new expert evidence on this issue is not harmless. In addition, plaintiffs assert that the omission of the last page of Dees's affidavit from its original filing resulted from a series of clerical errors, and offer a detailed explanation on how this occurred. (See Resp. Def's Opp'n Notice of Filing Mot. Supp. Leave Correct Affidavit (DE 77) 8–10). The court finds this explanation plausible. But even if plaintiffs' account is true, meaning that Dees's new opinions should have appeared in his original affidavit, those opinions still would have been untimely. Plaintiffs' explanation does not address why Dees's expansion of his opinions would have been substantially justified even there.

The court therefore construes defendant's opposition to filing as a motion to strike paragraphs 15 to 20 of Dees's updated affidavit, and grants the motion to strike. The court will not consider these paragraphs to any extent at summary judgment.

d.      Breach of Contract

Defendant argues that plaintiffs present no evidence on the causation of the damages to plaintiffs' buildings, as required to bring its claims within the language of the policy, and that the

damage to the building at 3714 Guardian Avenue was below the policy's deductible.[5]  The court disagrees with each argument.

An insured bears the burden of showing that its claim falls within the coverage language of a policy.  See Abernethy v. Hosp. Care Ass'n, Inc., 254 N.C. 346, 348 (1961).  The parties therefore agree that plaintiffs must produce some evidence that the policy's coverage language encompasses the building damages here to avoid summary judgment.  (See Def's Br. Supp. 3–4; Mem. Opp'n Def's Mot. Sum. J. (DE 60) ("Pls' Br. Opp'n") 8–9).

The insurance policy in this case covers wind and hail damage, and covers water damage only if the water entered the building through openings or flaws created by wind or hail.  (See Def's SMF ¶ 13).

As such, defendant's overarching argument on this claim is that plaintiffs produce no evidence that the damage to the building resulted from wind or hail within the language of the policy.  Specifically, defendant argues that expert testimony on causation is required to support a claim involving damage to a building, and that plaintiffs' lack of expert testimony on causation is therefore inherently fatal to this claim.  (See generally Def's Br. Supp.).

Defendant relies upon Ritz Gormet, Inc. v. Nationwide Mut. Fire Ins. Co., No. 1:13-cv-303, 2014 WL 12539655 (M.D.N.C. June 24, 2014), for this point.  (See Def's Br. Supp. 3–8).  However, defendant misreads Ritz Gormet, and overlooks plaintiffs' non-expert evidence which creates a dispute of fact.

Ritz Gormet involved facts admittedly similar to this case.  There, an insured procured a policy covering hail damage to its premises, and sought proceeds under the policy following a storm.  See Ritz Gormet, 2014 WL 12539655, at *1–2.  There, as here, the insurer disputed that

---

[5]      Plaintiffs present no evidence or argument on its contract claim regarding the other buildings.  The breach of contract claim therefore revolves around this particular building.

the damages rested within the policy's language on covered causes of structural damage.  Id.  The insurer offered evidence that general disrepair and improper maintenance caused the damages, not hail, which the insured attempted to rebut at summary judgment with hearsay statements and the lay opinion testimony of the insured entity's owner.  See id. at *3–4.  The court disregarded the former as inadmissible, and discounted the latter as a combination of hearsay and an attempt to "provide expert opinion on causation," notwithstanding the owner's status as a lay witness.  See id.  The Ritz Gormet court therefore granted summary judgment to the insurer.  Id. at *4.

Defendant therefore argues that Ritz Gormet and an Eastern District of Louisiana case upon which it relies demonstrate a per se rule that expert opinion testimony is required in insurance cases involving structural damage to buildings.  The court disagrees, and concludes that Ritz Gormet actually reflects an implicit application of Federal Rule of Evidence 701, not a per se rule on required witnesses in insurance cases.  Ritz Gormet's holding was that the plaintiff-insured had no causation evidence to support its claim at all, not that its lack of expert testimony was dispositive.  See id.  The Ritz Gormet court excluded and declined to consider any of the plaintiff's evidence, on grounds that it all constituted hearsay, and that the insured entity's owner was not an expert but attempted to introduce expert testimony.  Crucially, the owner's testimony constituted opinions on the cause of structural damage to a building, which the owner, "not an engineer[,]" was unqualified to present.  See id.

This conclusion represents an implicit but unremarkable application of Rule 701, which forbids lay opinion testimony based on scientific or technical knowledge.  The Ritz Gormet court therefore implicitly concluded that the causes of structural damage involved scientific or technical knowledge, so that the lay witness owner could not offer opinion testimony on that subject.

Because the insured's only other causation evidence was inadmissible hearsay, the insured had no evidence on causation <u>at all</u>.

<u>Ritz Gormet</u> therefore does not stand for the broad rule that defendant advances. Nor do the other cases from this and other jurisdictions which defendant cites in its reply brief. <u>See</u> <u>H/S Wilson Outparcels, LLC v. Kroger Ltd. P'ship I</u>, No. 5:15-CV-591-RJ, 2017 WL 4293404, at *3– 5 (E.D.N.C. Sept. 27, 2017) (applying Rule 701); <u>Guyther v. Nationwide Mut. Fire Ins. Co.</u>, 109 N.C. App. 506, 514–15 (1993) (ruling that lay opinion testimony on cause of structural collapse was improper); <u>Quarter Holdings, LLC v. Axis Surplus Ins. Co.</u>, No. 11-2765, 2012 WL 3879525, at *2 (E.D. La. Sept. 6, 2012) (applying Rule 701); <u>Qualls v. State Farm Lloyds</u>, 226 F.R.D. 551, 555–59 (N.D. Tex. 2005) (relying upon aspects of Texas substantive law not applicable here); <u>Am. Family Mut. Ins. Co., S.I. v. Secura Ins.</u>, 2021AP1831, 2023 WL 2173945, at *2–3 (Wis. Ct. App. Feb. 23, 2023) (same with Wisconsin law).

Having concluded that plaintiffs' lack of expert testimony on causation is not inherently and in itself fatal to plaintiffs' claims, the court turns to the evidence that plaintiffs <u>do</u> possess. Defendant's own engineer concluded in his report that wind created an opening in the building's roof, which permitted water to enter the building. (Def's App. SMF Ex. A-4 (DE 48-5) ("MKA Report") 8). However, the engineer attributed this to a prior structural flaw which improper repairs permitted the wind to aggravate. (<u>See</u> <u>id.</u>). In contrast, plaintiffs offer an affidavit from the contractor who made the repairs who, on the basis of his personal knowledge, asserts that all repairs were conducted properly and that some of the engineer's factual assertions about the building's repair history are incorrect. (<u>See</u> Pls' App. SMF Ex. 5 (DE 62-5) ("Hipkiss affidavit") ¶¶ 7–11).[6]

---

[6]  Defendant argues that the court should disregard this affidavit because the court ruled in May, 2023 that plaintiffs could not untimely designate the affiant as an expert. (<u>See generally</u> Order (DE 50)). However, Hipkiss's affidavit does not attempt to introduce any expert testimony, but rather Hipkiss's personal experience with the building and its repair history. The court therefore rejects defendant's argument on this point.

These two sources collide directly on the factual issue of whether the admitted water entry occurred because of wind alone, or because of improperly performed pre-hurricane repairs. These clashing pieces of evidence thus create an issue of fact on causation and therefore on coverage. That part of defendant's motion seeking summary judgment on this claim cannot rest on this argument.

The court turns next to defendant's argument that the damages to the 3714 Guardian Avenue building did not exceed the policy's deductible. Defendant contends that, because only 10-12% of the water damage to that building occurred through covered causes, defendant is responsible for only 12% of the repair costs for that building. (See Def's Br. Supp. 6–7). Specifically, the policy's deductible on that location is $182,005.08, and plaintiffs spent $768,033.26 repairing the premises.[7] (Def's Br. Supp. 6–7; Def's App. SMF Ex. F-1 (DE 48-19) 1). Thus, defendant is responsible for only 12% of the latter figure, which calculates to $92,163.99. Because this figure is below the deductible, defendant owes nothing on that building and has not breached the contract as a matter of law. (See Def's Br. Supp. 6–7).

However, the court has already concluded that the 10-12% statements are hearsay, and declines to consider them for their truth at summary judgment. Defendant's deductible argument collapses without the 10-12% figure in the calculations. Because the court will not consider those statements for their truth, this argument fails.

In sum, plaintiffs have introduced sufficient evidence to create a dispute of material fact on whether the policy language applies to the building damages here, and on whether defendant breached the policy by failing to pay amounts due. The court therefore denies defendant's motion on the breach of contract claim as regards the 3714 Guardian Avenue building. By contrast,

---

[7] Plaintiffs argue that this figure is not the correct deductible for this location. Because the correct deductible ultimately has no impact on defendant's argument here, the court reserves its full discussion of the deductible dispute for plaintiffs' UDTP claim, where it is potentially dispositive of part of that claim.

plaintiffs have produced no argument or evidence supporting a breach of contract regarding defendant's business income coverage determinations, or the other buildings, located at: 1) 3700 Symi Circle; 2) 306 Medical Park; 3) 3726 Guardian Avenue; and 4) 221 Professional Circle. The court therefore grants defendant's motion on this claim regarding these other buildings, and plaintiffs' business income losses.

        e.        UDTP

Plaintiffs assert a UDTP claim for several alleged violations of N.C. Gen. Stat. § 58-63-15(11) and § 75-1.1. To establish a UDTP claim, a plaintiff must show 1) an unfair and deceptive act or practice; 2) in or affecting commerce; 3) which proximately caused injury to the plaintiff. Walker, 362 N.C. at 71–72. Conduct that violates N.C. Gen. Stat. § 58-63-15(11) satisfies the first element as a matter of law. DENC, LLC v. Phila. Indem. Ins. Co., 32 F.4th 38, 50 (4th Cir. 2022). Plaintiffs argue that defendant violated Section 58-63-15(11) in several ways.

        i.        Misrepresenting Policy Terms (N.C. Gen. Stat. § 58-63-15(11)(a))

Section 58-63-15(11)(a) forbids misrepresenting the terms of a policy. Id. Plaintiffs argue that defendant misrepresented the policy's contractual statute of limitations, and its deductible. The court examines each contention in turn.

First, plaintiffs argue that defendant misrepresented the policy's contractual statute of limitations. Defendant's May 26, 2020 letter to plaintiffs quotes part of the policy, which establishes a two year statute of limitations for any suit against defendant based on the policy. (See Def's App. SMF Ex. A-8 (DE 48-9) ("May Letter") 2). However, the policy contains an endorsement enlarging this period to three years and one day. (Insurance Policy 32). Defendant therefore misrepresented the terms of the policy to plaintiffs, as defendant concedes in its brief. (See Reply Supp. Mot. Summ. J. (DE 71) ("Def's Reply Br.") 13).

But that conclusion is not dispositive. A UDTP plaintiff who relies upon a misrepresentation to satisfy the statute's first element must show actual reasonable reliance on the misrepresentation to establish proximate cause. See Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88–89 (2013). Plaintiffs produce no evidence or argument that they actually, reasonably relied upon this misrepresentation to their detriment, besides conclusory statements in their brief that they had to retain attorneys to read the policy. Bare arguments of counsel alone, without any record evidence, cannot create a genuine issue of material fact. Rountree v. Fairfax Cnty. Sch. Bd., 933 F.3d 219, 223 (4th Cir. 1991). Plaintiffs therefore cannot sustain their UDTP claim on this misrepresentation.

The court next turns to the policy's deductible. The parties offer clashing interpretations of the policy's deductible terms. Defendant argues that the deductible is 2% of the value of each insured building, while plaintiffs contend the deductible for each building is a flat $50,000. Plaintiffs therefore argue that defendant's position, which defendant stated in its correspondence to plaintiffs, was a misrepresentation under Section 58-63-15(11)(a).

The court interprets a plain and unambiguous contract as a matter of law. Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 273 (2008). Contractual ambiguity exists when the meaning of words, or the effect of provisions, is uncertain or capable of several reasonable interpretations. Id.

The parties' disagreement revolves around the policy's deductible provision. That clause reads as follows:

Peril Deductible(s)

$50,000 Per Occurrence for All Covered Perils, except:
**2.00% of the Total Insurable Values per location (including time element if applicable) at the time of loss or damage subject to a minimum of $50,000 Per Occurrence for Named Storm[.]**

17

(Insurance Policy 2) (emphasis added).

Plaintiffs admit that Hurricane Florence was a named storm within the meaning of this provision. (See Pls' Br. Opp'n 11). Plaintiffs therefore argue that the sub-provision emphasized above establishes a per se deductible of just $50,000. (Id. 11, 26).

The court concludes that no ambiguity exists in this language, and that plaintiffs' position is an unreasonable construction of the policy. The clear language of the policy states that for named storms, the deductible is 2% of the insured building's value, and must be at least $50,000. (Insurance Policy 2). Accordingly, defendant's interpretation is the only possible reasonable reading of this provision, as a matter of law. Schenkel & Schultz, Inc., 362 N.C. at 273.

Defendant's correspondence about the deductible stated these terms, attached its appraisal of the buildings' respective values, and used them to calculate deductibles of 2% on each. (See May Letter 2, 5). Defendant accurately represented the policy's deductible terms as a general matter, and the deductibles for specific buildings in particular. Defendant's correspondence on the deductible was not a misrepresentation under Section 58-63-15(11)(a).

Plaintiffs do not present evidence that they reasonably relied upon defendant's misrepresentation of the policy's contractual statute of limitations, and defendant did not misrepresent the policy's deductible. Plaintiffs' claims under Section 58-63-15(11)(a) therefore fail.

            ii.     Refusal to Settle (N.C. Gen. Stat. § 58-63-15(11)(f))

Section 58-63-15(11)(f) prohibits an insurer from not attempting to effectuate prompt settlement of claims on which liability has become "reasonably clear[.]" Id.

A violation of Section 58-63-15(11)(f) generally requires the insurer to refuse to pay or settle when objective or outside forces demonstrate liability, not when the parties reasonably

18

dispute coverage. See, e.g., Elliot v. Am. States Ins. Co., 883 F.3d 384, 398 (4th Cir. 2018) (liability became reasonably clear when jury returned verdict on fault in underlying events); Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 63–64, 72–74 (2000) (liability under statute when insurer ignored its own adjuster's figures and conclusions); Luther v. Seawell, 191 N.C. App. 139, 144–45 (2008) (no liability under statute when insurer made genuine argument on coverage). Thus liability is not "reasonably clear" if a genuine dispute on liability or coverage exists, and advocating a coverage position that ultimately proves incorrect does not violate the statute. See, e.g., Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 234 (4th Cir. 2001).

Plaintiffs' position on this issue depends on the correctness of their argument on the breach of contract claim. Plaintiffs argue that their position on causation and other issues demonstrates that no reasonable dispute on coverage should exist, so that defendant simply obstinately refuses to pay a claim whose validity the parties reasonably should accept. (See Pls' Br. Opp'n 27). But the court has concluded above that issues of fact exist on the underlying events, and that the parties genuinely dispute coverage. Liability under the policy is therefore not "reasonably clear[.]" N.C. Gen. Stat. § 58-63-15(11)(f).

Plaintiffs also reply upon Whitworth v. Nationwide Mut. Ins. Co., No. 1:17cv1124, 2018 WL 4494885 (M.D.N.C. Sept. 19, 2018), to argue that reasonable disputes about coverage are irrelevant. (See Pls' Br. Opp'n 29–30). However, Whitworth dealt with a narrow claim under N.C. Gen. Stat. § 58-63-15(11)(d), which prohibits failing to reasonably investigate a claim. See id. The Whitworth court refused to permit the insurer to raise a reasonable dispute on coverage argument under this statute, because such disputes were irrelevant to whether the insurer conducted an investigation.

Because reasonable disputes on coverage exist, plaintiffs' 58-63-15(11)(f) claim fails.

iii.    Compelled Litigation (N.C. Gen. Stat. § 58-63-15(11)(g))

Section 58-63-15(11)(g) prohibits an insurer from compelling the insured to "institute litigation to recover <u>amounts due</u> under an insurance policy" by offering substantially less than the amounts ultimately recovered. <u>Id.</u> (emphasis added).

North Carolina precedent interpreting this provision is sparse. However, this court previously has held that the provision requires a coverage determination in the insured's favor. <u>Essentia Ins. Co. v. Stephens</u>, 530 F. Supp. 3d 582, 609 (E.D.N.C. 2021). The statute's text refers only to litigation to recover "amounts due," and ignoring reasonable disputes on coverage would therefore flout the statute's plain text, and establish strict liability for any insurer who advances reasonable arguments on coverage or liability ultimately found to be incorrect.

The court has already concluded in its discussion of plaintiffs' breach of contract claim that reasonable disputes on coverage exist here. And no coverage or liability determination has been made in plaintiffs' favor. Plaintiffs' Section 58-63-15(11)(g) claim therefore fails as a matter of law, for the same reasons as their claim under Section 58-63-15(11)(f).

iv.    Undue Delay (N.C. Gen. Stat. § 58-63-15(11)(e))

Section 58-63-15(11)(e) prohibits an insurer from failing to affirm or deny coverage of a claim within a reasonable time after proof-of-loss statements are submitted.

Plaintiffs submitted the only proof-of-loss statement in the record on October 26, 2018. (<u>See</u> Pls' App. SMF Ex. 4 at 4). This statement asserted a right to an advance payment of $200,000. (<u>Id.</u>). Defendant tendered a check for $200,000 to plaintiffs on October 30, 2018. (<u>See</u> Def's App. SMF Ex. A-7 (DE 48-8)). Thus, only four days elapsed between plaintiffs' submission of the proof-of-loss form and defendant's affirmance of coverage on that sum. This short gap was not

unreasonable.  See, e.g., Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 612 (2006) (concluding that gap of five months was not unreasonable); Laschkewitsch v. Legal & Gen. Am., Inc., 247 F. Supp. 3d 710, 720 (E.D.N.C. 2017) (concluding that six week gap was reasonable). Plaintiffs' claim under Section 58-63-15(11)(e) therefore fails as a matter of law.

> f.    Common Law Bad Faith

The precise basis on which plaintiffs assert this claim is unclear.  Plaintiffs' complaint and briefing assert various and shifting legal theories of bad faith, from which the court discerns two threads: 1) breach of the implied covenant of good faith and fair dealing; and 2) bad faith refusal to settle an insurance claim.

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228 (1985).  More specifically, North Carolina "law imposes on the insurer the duty of carrying out in good faith its contract of insurance," including the insurer's "right to effectuate settlement." Alford v. Textile Ins. Co., 248 N.C. 224, 229 (1958) ("[C]ourts have consistently held that an insurer owes a duty to its insured to act diligently and in good faith in effecting settlements within policy limits.").

This court has previously recognized that "[t]o establish a claim for bad faith refusal to settle, [the insured] must show: 1) 'a refusal to pay after recognition of a valid claim; 2) bad faith; and 3) aggravating or outrageous conduct.' " Labudde v. Phoenix Ins. Co., No. 7:21-CV-197-FL, 2022 WL 2651846, at *5 (E.D.N.C. July 8, 2022) (quoting Zurich Specialties London, Ltd., 11 F. App'x at 237).  Whether analyzed as a claim for implied covenant of good faith or refusal to settle, bad faith is a necessary element.

As an initial matter plaintiffs present no evidence of bad faith, because the court already has determined that a genuine dispute on coverage exists. Plaintiffs make several arguments about other practices by defendant that plaintiffs contend demonstrate defendant's bad faith in the claims process generally. But these also fail for the same reasons plaintiffs' UDTP claims fail.

Plaintiffs add an additional argument for this claim: that defendant improperly relied upon two policy exclusions to deny coverage. This argument calls attention to an anomaly in the record. Both parties take as given that defendant cited two policy exclusions in the May Letter to plaintiffs; defendant argues that it nonetheless did not rely upon these exclusions in reaching a coverage decision. (See Pls' Br. Opp'n 23–24; Def's Reply Br. 12). However, the court has closely scrutinized both the May Letter and the December Letter, and neither policy exclusion appears in either letter. (See May Letter; Dec. Letter). The parties therefore seemingly agree on a fact that the record evidence contradicts. But because plaintiffs have not actually introduced any evidence that defendant even mentioned the policy exclusions, much less relied upon them to deny coverage, this argument cannot support plaintiffs' bad faith claim.

In addition, as pertinent to a bad faith refusal to settle claim, plaintiffs have not demonstrated a genuine issue of fact that defendant recognized a valid claim. Plaintiffs argue that defendant's investigation of the claim and partial payment of proceeds constituted recognition of plaintiffs' full claim as valid. (See Pls' Br. Opp'n 23). However, plaintiffs point to no basis in the law for deeming an investigation a recognition of a claim. In addition, this court previously has held that partial payment of proceeds is not recognition of a claim in full. Labudde, 2022 WL 2651846, at *5.

In sum, plaintiffs advance no evidence creating a genuine issue of fact that defendant refused to pay proceeds on the claim portion defendant actually recognized, or that defendant's

actions were not the result of a genuine dispute on coverage. The court thus grants defendant's motion on plaintiffs' common law bad faith claim.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 44) is GRANTED IN PART and DENIED IN PART, as follows. Defendant's motion is GRANTED with respect to the following claims, which are dismissed with prejudice:

1)      Common law bad faith;

2)      UDTP.

Defendant's motion is DENIED with respect to plaintiffs' breach of contract claim, which will proceed to trial.

Plaintiffs' motion to strike (DE 63) is GRANTED. Defendant's opposition to notice of filing (DE 75) is construed as a motion to strike and GRANTED. Defendant's motion for leave to file a reply in support thereof (DE 78) is DENIED. Plaintiffs' motion for oral argument (DE 76) is DENIED.

In accordance with the case management order entered December 8, 2021, as amended August 31, 2022, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. The parties are DIRECTED to confer and file within **14 days** from the date of this order a joint status report informing the court of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates. The parties shall specify if they wish to schedule a court-hosted settlement conference or additional alternative dispute resolution procedures in advance of trial, and if so the date for completion of such.

SO ORDERED, this the 29th day of December, 2023.

LOUISE W. FLANAGAN
United States District Judge